PEOPLE v UNDERWOOD

Docket No. 97233. Argued November 2, 1994 (Calendar No. 10).
    Decided December 30, 1994.

Lanford Underwood, while an inmate at the Michigan Reforma-
    tory in Ionia, was convicted by a jury in the Ionia Circuit
    Court, Charles W. Simon, Jr., J., of assault with intent to
    commit murder and armed robbery of a civilian employee of
    the Department of Corrections. Before trial, the prosecutor had
    revealed that a confidential informant had contacted the State
    Police regarding the incident, and the defendant moved for
    disclosure of the informant's identity. The trial court denied
    the motion. The Court of Appeals, CORRIGAN, P.J., and SHEPHERD
    and McDONALD, JJ., affirmed in an unpublished opinion
    per curiam, upholding the denial of the defendant's motion
    (Docket No. 136812). The defendant appeals.

    In an opinion by Justice GRIFFIN, joined by Chief Justice
    CAVANAGH, and Justices LEVIN, BRICKLEY, and MALLETT, the
    Supreme Court *held:*

    Remand to the trial court is required for a hearing in camera
    to determine whether the confidential informant's proffered
    evidence is relevant and helpful to the defense or is essential to
    a fair determination of the defendant's guilt.

    1. Disclosure of an informant's identity must be considered
    case by case. Where the government invokes the "informer's
    privilege" following a defense request for disclosure and the
    accused is able to demonstrate a possible need for the infor-
    mant's testimony, the trial court should require production of
    the informant and conduct a hearing in chambers, out of the
    presence of the defendant. At the hearing, the court can
    examine the informant to determine whether any testimony
    could be offered that would be helpful to the defense. A record
    should be made of the hearing and the contents sealed, with
    access limited to an appellate court.

    2. In this case, the supplemental incident report prepared by
    the State Police, on its face, provides information concerning
    the substantive issue of the defendant's guilt or innocence. The
    prosecution's case was based on circumstantial evidence be-
    cause two inmates who had been assigned to work with the
    defendant at the place and time of the incident exercised their

Fifth Amendment rights to remain silent, and thus became unavailable as witnesses. The defendant's access to information regarding the other inmates, therefore, was limited to hearsay testimony that could be provided only by the informant. Questions raised by the informant's statement to the police bear not only on the defendant's culpability, but also on instructional and sentencing issues. Thus, remand to the trial court for a hearing in camera is required.

Vacated and remanded.

Justice BOYLE, joined by Justice RILEY, dissenting, stated that there is no need to return this case to the circuit court for in camera review. The substantive content of the information provided by the informant is known to both the parties, as well as the trial judge. In camera review is not warranted by a mere minimal showing of relevance and should only be authorized where the defense has demonstrated a reasonable probability that the informant's testimony is essential. The defendant in this case failed to make this demonstration. The content of the informant's statement not only fails to advance the defendant's position that, at most, he was an accessory after the fact to the robbery and assault, but inculpates him as a participant in the crimes as a lookout. The trial court's decision was not clearly erroneous.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *Raymond Voet,* Prosecuting Attorney, and *J. Ronald Kaplansky,* Assistant Attorney General, for the people.

State Appellate Defender (by *Peter Jon Van Hoek*) for the defendant.

GRIFFIN, J. In this appeal we are asked to review the trial court's denial of defendant's pretrial request for disclosure of the identity of a confidential informant who allegedly possessed exculpatory information concerning defendant's role in the charged offense. After viewing the particular circumstances presented in light of the due process guarantee,[1] we conclude that this case should be remanded to the trial court for a hearing in cam-

---

[1] US Const, Am XIV; Const 1963, art 1, § 17.

era to determine whether the confidential informant's proffered evidence is relevant and helpful to the defense or is essential to a fair determination of defendant's guilt.

I

Following a two-day jury trial, defendant Lanford Underwood was convicted of assault with intent to commit murder,[2] and armed robbery.[3]

On March 7, 1990, Paul Wicklander, a civilian employee of the Michigan Department of Corrections, was beaten with a wooden object and robbed. Wicklander was an accountant who worked in the furniture factory at the Michigan Reformatory in Ionia, where defendant was an inmate. At the end of the day shift, the victim was found behind some boxes in the factory area. He had suffered a severe head injury and injuries to his finger. His wallet, as well as his wedding ring, were missing. The beating suffered by Wicklander was so severe that he had no memory of the incident and could offer no testimony concerning the circumstances of the assault or the identity of his assailants. Only three inmates were assigned to work in the area of the furniture factory that afternoon; they were Robin Manning, Hassan Martin, and defendant Underwood.

The victim's empty wallet was subsequently found in a file cabinet drawer in the factory area. A table leg bearing blood stains was found near the area of the assault, and it was later determined that the blood stains matched the victim's

---

[2] MCL 750.83; MSA 28.278.

[3] MCL 750.529; MSA 28.797. Defendant was sentenced to concurrent prison terms of forty to sixty years on the assault charge and twenty to forty years on the robbery charge, with the sentences to run consecutively to a prison sentence he was serving when the alleged offenses occurred.

blood type. The victim's ring was recovered from another inmate. A note advising someone to dispose of the ring was found in defendant's cell, but no money or other property belonging to the victim was found there. Defendant's sweatsuit jacket bearing blood stains that matched the victim's blood type was found in a trash can in defendant's cellblock. Defendant's fingerprints were found on the wallet, the file cabinet, and the table leg.

The prosecution alleged that it was defendant Underwood who assaulted and robbed Wicklander. Neither Manning nor Martin were charged with any offense arising out of this incident.

Before trial, the prosecutor provided defendant's counsel with a supplemental incident report prepared by the Michigan State Police, dated June 4, 1990, in which it was revealed that a confidential informant had contacted the police concerning the incident. According to the report, the informant advised police that he had been in contact with inmate Manning, who had made statements concerning the beating of Wicklander. The report included the following:

> According to the c/i [confidential informant], Manning claimed that the Police had arrested the wrong person. Manning claimed that "dog" had just been a lookout for Manning and Martin.
>
> Manning further advised that the three intended to rob Wicklander. According to Manning, Wicklander was always flashing alot [sic] of money and telling the inmates that they needed to get a good State job like he had so they could have money like Wicklander.
>
> According to the c/i, Manning said that he along with Martin hid in the stock room by the tool crib. As Wicklander was making his final rounds in the stock room, Manning threw a coat over Wicklander's head and then pushed him. Manning then told Wicklander that he wanted his money. Wick-

lander pulled the coat off his head and told Manning that he would give him his money.

The c/ɪ claims that Manning took the money and placed it in his under shorts. At this point, Manning claimed that Martin said we got to kill this guy because we will get all day for this.

Manning claimed that he hit Wicklander with a pipe while Martin punched and kicked Wicklander. After the beating, the three left.

Manning maintained that they were able to get out of the factory because they had an "old timer" working the gate and they thought that they could get by him without any trouble. Manning further advised the c/ɪ that they had put prison coveralls on to cover up their blood stained clothes.

Manning told the c/ɪ that he had given his bloody clothes to another inmate by the name of Wershe.

Manning also mentioned to the c/ɪ that he had access to the store room keys. The c/ɪ advised that Manning did not say much about the keys.

The c/ɪ describe [sic] the area of the crime scene fairly well. He mentioned the isleway [sic] where Wicklander was assaulted, the tool crib area, and the fact that Manning said that he and Martin hid behind some boxes.

According to the prison records, the c/ɪ has never been incarcerated at the Michigan Reformatory.

The report further indicated that "[t]he informant advised that he is willing to take a polygraph test and testify in court if Officer can get his disciplinary points reduced."

Defendant filed a pretrial motion requesting disclosure of the name, prison number, and location of the confidential informant or, alternatively, an order granting immunity to Manning and Martin in exchange for their testimony. The motion was argued on September 4, 1990. Noting that it was Manning who allegedly made the statement to

the informant, and that defense counsel was free to speak directly to Manning, the prosecutor argued that disclosure was unnecessary because the informant's testimony under such circumstances would be inadmissible hearsay. The trial court agreed and denied the motion.

When defense counsel asked if he would be allowed to impeach Manning with the statement if Manning denied making the admission, the court replied:

> I think the public policy involved in confidential informants is such that it would outweigh the probative value of trying to impeach Mr. Manning.

The trial began on October 30, 1990. On the second day of trial, defense counsel sought to determine whether Manning or Martin would testify if called as witnesses. Outside the presence of the jury, and after consulting with counsel, both Manning and Martin exercised their Fifth Amendment rights to remain silent. Defendant then requested the court to grant immunity to Manning and Martin, but the motion was denied.

The trial proceeded, and defendant testified in his own behalf. His job assignment at the factory was as a receiving clerk. He explained that on the afternoon in question, Manning asked, and was allowed, to borrow defendant's sweatsuit jacket in order to go into an area where dress rules required more than just a T-shirt. At approximately 3:10 P.M., defendant claimed he saw Wicklander come back from his afternoon break. Both Manning and Martin were at their desks, and defendant went to the restroom after locking up the stockroom and giving the keys to Manning. Defendant testified that when he returned to the office area, neither Manning nor Martin were there. Through a win-

dow he saw Manning and Martin coming from the direction of the stockroom. Defendant testified that Manning walked up to him, handed him a wallet, and said "I want you to get rid of this." Manning and Martin then reached down and slid some pieces of wood through a porthole to defendant, asking him to put the wood in a nearby locker. Defendant admitted that he touched both the wallet and the pieces of wood, and that he put the wallet in a drawer of the file cabinet. He said he did not put the pieces of wood in the locker. Defendant testified that he was scared and knew that something was wrong when he saw blood on the wood. Defendant punched out at 3:40 P.M. and left the office.

Shortly thereafter, according to defendant, Manning came up to him and handed him the jacket, which was tightly folded. Defendant put the jacket on under his prison coat. Manning also handed him a ring with directions that it be given to a neighboring cellmate, Eric Williams, as payment for a debt Manning owed Williams. Defendant denied taking the ring from Wicklander.

Defendant further testified that when he returned to his cell, he saw blood spots on his jacket and told an inmate porter to throw the jacket into the trash. Shortly thereafter the emergency siren sounded in the prison, and defendant said he knew then that something was seriously wrong. Defendant testified that he wrote a note to Williams directing him to get the ring out of his cell. The note was discovered by officers who came to search defendant's cell. When questioned, defendant told an investigating detective that he did not know what had happened to Wicklander because he feared the consequences of "snitching" on other inmates.

Apparently, defendant's version of the events

was rejected by the jury because he was convicted as charged. On appeal, defendant argued that he was entitled, at a minimum, to an evidentiary hearing on the value of the informant's testimony. However, the Court of Appeals ruled that the informant's identity need not be disclosed, and affirmed defendant's conviction.[4]

We then granted leave to appeal. 445 Mich 882 (1994).[5]

## II

Defendant argues that the trial court's denial of his motion for identification of the confidential informant was error requiring reversal because it was premised on the presumed ability of defendant to require Manning to testify regarding the substance of his out-of-court statement to the informant. However, when Manning later asserted his Fifth Amendment privilege and made himself unavailable to testify, the hearsay problem posed by the prosecution was fundamentally altered. It is defendant's contention that, under these circumstances, the informant would have been permitted under MRE 804(b)(3)[6] to testify concerning Man-

---

[4] The opinion of the Court of Appeals stated:

The circuit judge reasoned, in denying the motion, that the defense lawyer could talk to Robin Manning about his alleged statement. This reasoning is flawed because Manning had already asserted his Fifth Amendment privilege. [Unpublished opinion per curiam, issued June 9, 1993 (Docket No. 136812).]

[5] The order limited review to the issue "whether defendant was denied due process when the trial court denied his request for the identity and production of the confidential informant who had informed police about another suspect's confession of the crime."

[6] MRE 804(b)(3) provides that the following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

A statement which was at the time of its making so far

ning's out-of-court statement because it amounted to an admission against Manning's penal interest. Defendant maintains that the informant's testimony was crucial to his defense, and that denial by the trial court violated his due process right to a fair trial.

Justification for the so-called "informer's privilege" was explained in *People v Laird,* 102 Mich 135, 138; 60 NW 457 (1894):

> The general rule is that persons engaged in the detection of crime are not bound to disclose the sources of the information which led to the apprehension of the prisoner. The reason for the rule is that such disclosure can be of no importance to the defense, and may be highly prejudicial to the public in the administration of justice by deterring persons from making similar disclosures. [See also *People v Asta,* 337 Mich 590, 602; 60 NW2d 472 (1953).]

*Laird* recognized, however, that disclosure of an informant's identity must be considered case by case:

> "[W]e are not called upon in this case to consider whether there may not be cases in which the prosecuting attorney would be excused, in the interest of the State, from disclosing what had been told to him with a view to the commencement of criminal proceedings. There would be strong reasons in many cases why the counsel of the State should be inviolably kept; and nothing

---

contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject him to civil or criminal liability, or to render invalid a claim by him against another, that a reasonable person in his position would not have made the statement unless he believed it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

we shall say in this case will be intended to lay down a rule except for the very case at bar and others standing upon the same facts." [*Id.* at 139-140.]

The United States Supreme Court subsequently adopted a similar approach, holding that application of the informer's privilege depends on the particular circumstances of each case. In *Roviaro v United States,* 353 US 53; 77 S Ct 623; 1 L Ed 2d 639 (1957), the confidential informant was a person alleged to have been actively involved as a police agent in alleged narcotics offenses. The trial court refused a defense request for disclosure of the informant, and at trial the informant did not testify. On appeal, the Supreme Court reversed, holding that failure to disclose the informer's identity prejudiced the defendant's right to a fair trial. The *Roviaro* Court explained:

> What is usually referred to as the informer's privilege is in reality the Government's privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law. . . . The purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement. The privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation.
> The scope of the privilege is limited by its underlying purpose . . . . *A further limitation on the applicability of the privilege arises from the fundamental requirements of fairness. Where the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way.* [353 US 59-61. Emphasis added.]

.The Court continued:

> [N]o fixed rule with respect to disclosure is
> justifiable. The problem is one that calls for bal-
> ancing the public interest in protecting the flow of
> information against the individual's right to pre-
> pare his defense. Whether a proper balance ren-
> ders nondisclosure erroneous must depend on the
> particular circumstances of each case, taking into
> consideration the crime charged, the possible de-
> fenses, the possible significance of the informer's
> testimony, and other relevant factors. [*Id.* at 62.][7]

Viewing the facts of the case before it in this
light, the Court concluded that the informant's
testimony would have been both relevant to the
charges at issue and helpful to the defense:

> The informer was the only witness in a position
> to amplify or contradict the testimony of govern-
> ment witnesses. Moreover, a government witness
> testified that Doe denied knowing petitioner or
> ever having seen him before. We conclude that,
> under these circumstances, the trial court commit-
> ted prejudicial error in permitting the Govern-
> ment to withhold the identity of its undercover
> employee in the face of repeated demands by the
> accused for his disclosure. [*Id.* at 64-65.]

The *Roviaro* reasoning and balancing test have
been applied in a number of Michigan cases. See
*People v Thomas,* 174 Mich App 411, 416; 436
NW2d 687 (1989); *People v Acosta,* 153 Mich App
504, 509; 396 NW2d 463 (1986); *People v Phelps,*

---

[7] See also *United States v Perkins,* 994 F2d 1184 (CA 6, 1993);
*United States v Martinez,* 979 F2d 1424 (CA 10, 1992); *United States
v Blevins,* 960 F2d 1252 (CA 4, 1992); *DiBlasio v Keane,* 932 F2d 1038
(CA 2, 1991); *United States v Eniola,* 282 US App DC 176; 893 F2d
383 (1990); *United States v Scafe,* 822 F2d 928 (CA 10, 1987); *United
States v Giry,* 818 F2d 120 (CA 1, 1987); *United States v Manley,* 632
F2d 978 (CA 2, 1980); *United States v Soles,* 482 F2d 105 (CA 2, 1973).
See, generally, 2 Weinstein, Evidence, ¶ 510[06], pp 510-38 to 510-49.

57 Mich App 300; 225 NW2d 738 (1975); *People v Wenrich,* 31 Mich App 644; 188 NW2d 102 (1971). Cf. *People v Patterson,* 79 Mich App 393; 262 NW2d 835 (1977).

The proper procedure for determining the appropriateness of disclosure was explained in *People v Stander,* 73 Mich App 617, 622-623; 251 NW2d 258 (1977):

> The procedural vehicle generally recognized as being the most useful for helping a trial judge to strike the appropriate balance between these competing interests is the in camera hearing . . . . [Citations omitted.]
>
> Thus, where the government invokes the privilege in the face of a defense request for disclosure, and where the accused is able to demonstrate a possible need for the informant's testimony, the trial judge should require production of the informant and conduct a hearing in chambers, and out of the presence of the defendant. At this hearing the court will have an opportunity to examine the informant in order to determine whether he could offer any testimony helpful to the defense. A record should be made of the in camera session and its contents sealed so that only an appellate court will have access thereto.[8]

By employing this procedure, the trial court will be in a position to weigh the competing interests of the parties and to make a determination

[8] The federal courts have employed the hearing in camera as a tool in balancing the competing interests recognized in *Roviaro, supra.* See, e.g., *United States v Jenkins,* 4 F3d 1338 (CA 6, 1993); *United States v Martinez,* n 7 supra; *United States v Straughter,* 950 F2d 1223 (CA 6, 1991); *United States v De Los Santos,* 810 F2d 1326 (CA 5, 1987); *Gaines v Hess,* 662 F2d 1364, 1369 (CA 10, 1981); *United States v Winters,* 420 F2d 523 (CA 3, 1970); *United States v Rawlinson,* 487 F2d 5 (CA 9, 1973); *United States v Doe,* 525 F2d 878 (CA 5, 1976); *United States v Freund,* 525 F2d 873 (CA 5, 1976); *United States v Lloyd,* 400 F2d 414 (CA 6, 1968); *United States v Day,* 384 F2d 464, 466-470 (CA 3, 1967) (McLaughlin, J., concurring); *United States v Jackson,* 384 F2d 825 (CA 3, 1967).

whether the informant should be produced. Consequently, the issue in the present case necessarily becomes whether defendant demonstrated a possible need for the informant's testimony and, if so, whether the trial court should have conducted a hearing in camera to determine whether Manning's statements, purportedly made to the confidential informant, are either relevant and helpful to defendant's defense or essential to a fair determination of defendant's guilt.

### III

There are several troublesome aspects of this case that lead us to the conclusion that a remand to the trial court for a hearing in camera is appropriate. First, the supplemental incident report, on its face, provides information concerning the substantive issue of defendant's guilt or innocence. Set against the backdrop of the absence of eyewitnesses to the crime and the circumstantial evidence that constituted the prosecution's case, we find it disturbing that the trial judge did not consider or evaluate the substance of the proffered evidence to determine its relevancy or bearing on defendant's culpability.

We believe this omission was due, in part, to the procedural posture of the case at the time defendant's motion for disclosure was argued in the trial court. The court's ruling on the motion was made before invocation by Manning and Martin of their Fifth Amendment right to remain silent.[9] Given this sequence of events, the ruling at the time appeared to be correct. Even then, the words used in denying the motion seemed to include a

---

[9] The Court of Appeals mistakenly reversed the sequence of events, stating that Manning had already exercised his Fifth Amendment privilege at the time of the hearing on the motion. See n 4.

tone of contingency ("the confidential informant's name and prison number will be denied as long as you have the name of Mr. Manning").

However, when Manning and Martin at a subsequent point in the trial exercised their Fifth Amendment right to remain silent and thereby became unavailable as witnesses, defendant's access to the information was suddenly limited to hearsay testimony that could be provided only by the informant.[10]

Although the informant claimed, according to the report, that "the Police had arrested the wrong person," it must be recognized that the informant's statement may not necessarily exculpate the defendant. Manning reportedly stated that " 'dog' had just been a lookout for Manning and Martin" and that "the three intended to rob Wicklander." Was "dog" in fact the defendant? Was defendant a "lookout" who had participated in planning the crime, thereby possibly rendering him more culpable than indicated by the defense theory that was advanced at trial (accessory after the fact)? See, e.g., *People v Fuller*, 395 Mich 451; 236 NW2d 58 (1975); *People v Davenport*, 122 Mich App 159; 332 NW2d 443 (1982); *People v Lyons*, 70 Mich App 615, 618; 247 NW2d 314 (1976); *People v Poplar*, 20 Mich App 132, 136-137; 173 NW2d 732 (1969).[11]

---

[10] During oral argument before this Court, the prosecutor for the first time argued that defendant waived the issue at hand by failing to formally renew his motion for disclosure after Manning and Martin invoked the Fifth Amendment privilege. However, we do not view the issue as having been waived for appellate review. Following the lead of the trial court's initial ruling, defendant continued to pursue the existing avenues of obtaining disclosure by ascertaining whether or not Manning and Martin would testify and alternatively moving that immunity be granted to Manning and Martin. These efforts contradict abandonment or waiver.

[11] Conversely, a statement, albeit inculpatory, may conceivably be "relevant" or "helpful to defendant's defense" for purposes of disclo-

Such questions, raised by the informant's statement to the police, bear not only on the defendant's culpability, but also on instructional and sentencing issues. For these reasons, we believe a remand to the trial court for a hearing in camera is required and may serve the interests of justice in this case. The trial court should interview the informant in camera and determine whether the information he can provide is either relevant and helpful to defendant's defense or essential to a fair determination of defendant's guilt.[12]

Assuming the trial court determines that the balance weighs in favor of the defendant, the court should then decide, depending on whether the information is inculpatory or exculpatory, whether the informant's testimony would be admissible under either the first or second sentence of MRE 804(b)(3), the statement against penal interest exception to the hearsay rule.[13] See, generally, *People v Poole*, 444 Mich 151; 506 NW2d 505 (1993).

Accordingly, we vacate the decision of the Court of Appeals and remand this case to the trial court with directions to conduct a hearing in camera consistent with the guidance provided in this opinion. If the trial judge finds that the informant could offer no testimony relevant or helpful to the defense, or that such testimony is relevant but inadmissible, defendant's conviction shall be af-

---

sure if it tends to mitigate defendant's culpability, or participation, thereby giving the jury the opportunity to return a verdict on a lesser included offense.

[12] Absent the further factual development that will flow from the in camera evidentiary hearing, we are unwilling to precipitously conclude, as does the dissent, that "there is no reasonable probability that the information would have affected the factfinder's determination of guilt or innocence . . . ." (Opinion of BOYLE, J., *post* at 711.)

[13] It would be premature for this Court to evaluate the admissibility of the informant's statement, on the basis of the incident report alone, without first having the benefit of the record of the evidentiary hearing and the trial court's threshold determination regarding relevancy, pursuant to *Roviaro, supra.*

firmed. If the finding is otherwise, the trial court shall determine whether defendant is entitled to a new trial. We retain jurisdiction.

CAVANAGH, C.J., and LEVIN, BRICKLEY, and MALLETT, JJ., concurred with GRIFFIN, J.

BOYLE, J. I dissent from the majority's decision to remand this case for in camera review. The majority's remand is based on the conclusion that the confidential informant can provide information that is relevant and helpful to instructional and sentencing issues. Because the informant's statement is not evidence essential to the defense presented by the defendant, I would affirm the Court of Appeals denial of disclosure of the informant's identity. The in camera process in this case is unnecessary.

I

The issue before us is not disclosure of the contents of the confidential informant's communication, because the government holds no privilege over that information as long as the contents of that information "will not tend to reveal the identity of an informer . . . ." *Roviaro v United States*, 353 US 53, 60; 77 S Ct 623; 1 L Ed 2d 639 (1957). What is at issue is the possible disclosure of the informant's identity to the defendant. "The purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement. The privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation." *Id.* at 59.

It is important to recognize that it. is not the information provided by the informant that is privileged. We are not here evaluating the standard for in camera examination of the content of a conditionally privileged communication, which we recently held is warranted by a reasonable probability that the communication is likely to contain material necessary to the defense. *People v Stanaway,* 446 Mich 643; 521 NW2d 557 (1994). The contents of the informant's testimony is well known to all the parties to the case.[1] The issue before us today is whether, given the known content of the information, the government's privilege to withhold the informer's identity must yield. Because there is no reasonable probability that the information would have affected the factfinder's determination of guilt or innocence, remand is not necessary.

II

Contrary to the analysis provided by the majority, *ante* at 705-706, the United States Supreme Court in *Roviaro* did not allow disclosure of the confidential informant's identity because that information would have been merely "relevant and helpful to the defense," but because they found the informant's testimony to be "essential to a fair determination of [the defendant's] cause . . . ."

---

[1] I continue to agree with the United States Supreme Court that a plausible showing of materiality and favorability is sufficient to warrant in camera review where it is the substantive content of the information sought that is privileged. *Pennsylvania v Ritchie,* 480 US 39, 58, n 15; 107 S Ct 989; 94 L Ed 2d 40 (1987); *United States v Valenzuela-Bernal,* 458 US 858, 867; 102 S Ct 3440; 73 L Ed 2d 1193 (1982).

*Roviaro, supra* at 60-61.[2] I recently discussed the requisite standard of materiality necessary for disclosure of a confidential informant's identity established by *Roviaro* and its progeny in *Stanaway, supra* at 725 (BOYLE, J., concurring):

> While the Court articulated a confusing "relevant and helpful" or "essential" standard of materiality in *Roviaro,* a closer look at the facts shows that the information sought—the informer's identity—was of vital importance to the defense. See *United States v Valenzuela-Bernal* [458 US 858, 870-871; 102 S Ct 3440; 73 L Ed 2d 1193 (1982)]. The informer was the only party participating with the defendant in the drug transactions for which the defendant had been accused, and the only witness who could possibly contradict the testimony presented by the government.
>
> A determination whether the privilege must yield depends on the significance of the privileged information in the particular circumstances of the case, that is, its probative force. Thus, while disclosure of the informant's identity in *Roviaro* was of vital importance because he was the only witness to the transaction charged, informant identity is denied where the informant does not actively participate in the transaction that generates the charge, or his information would be merely cumulative. *United States v Mendoza-Salgado,* 964 F2d 993 (CA 10, 1992). Evidence is material only if there is a reasonable probability that if it is disclosed to the defense, the result of the proceeding will be different. *United States v Parker,* 836 F2d 1080, 1083 (CA 8, 1987), quoting [*United States v*]

[2] I acknowledge that testimony by the informant may be the only means by which the information communicated to the informant can be introduced at trial. As noted by the majority, the party allegedly making the statements about the crimes to the informant exercised his Fifth Amendment right to remain silent. Although a description of the informant's statement is provided in a police report, the Rules of Evidence provide no means by which a defendant could introduce this hearsay information through police testimony.

This acknowledgment does not alter the course of our inquiry. The question remains whether the communication about which the informant might testify is essential to the defendant's defense.

*Bagley* [473 US 667, 682; 105 S Ct 3375; 87 L Ed 2d 481 (1985)].

While the majority notes the balancing test articulated in *Roviaro* for decision regarding whether disclosure of an informant's identity is warranted, *ante* at 704-705, I do not interpret that test to require a mere determination that the informer's testimony is relevant and helpful. Noteworthy in examining the proper utility of the *Roviaro* balancing test is *State v Whittey,* 134 NH 736; 599 A2d 117 (1991). Contending on appeal that he had been improperly denied discovery of a confidential informant's testimony after an in camera review, the defendant in *Whittey* argued that under New Hampshire's rules of evidence, once a court determined that it was reasonably probable that an informer could provide testimony that was "relevant," the state needed to engage in no further balancing of its interest in protecting the identity of the informant. *Id.* at 738. Rejecting the defendant's application of the *Roviaro* balancing test, the New Hampshire Supreme Court discussed the danger inherent in the defendant's proposed minimal standard of materiality:

> Acceptance of [the defendant's] argument against the balancing test would mean that the prosecutor's privilege would fail whenever a defendant could show that an informer's testimony is relevant to some issue relating to the defendant's guilt or innocence. Because so much unessential testimony falls under the category of "relevant," such a doctrine would eviscerate the prosecutor's privilege and seriously impede the flow of information necessary to effective police work. [*Id.* at 740.]

### III

As alluded to in *Stanaway, supra,* the defendant

faces an additional hurdle in this case because the informant neither witnessed nor participated in the offense at issue. The need to disclose an informant's identity under these circumstances is rare.

[W]hen the government informant is not an actual participant or a witness to the offense, disclosure is required only in those exceptional cases where the defendant can point to some concrete circumstance that might justify overriding both the public interest in encouraging the flow of information, and the informant's private interest in his or her own safety. [*United States v Martinez*, 922 F2d 914, 921 (CA 1, 1991). Citations omitted.]

While we agree the district court must disclose the informer's identity if the individual's testimony "might be relevant to the defendant's case and justice would best be served by disclosure," . . . we have consistently ruled that where the information sought "would be merely cumulative," or *where the informer did not participate in the illegal transaction, disclosure is not required* . . . . [*Mendoza-Salgado, supra* at 1000-1001. Emphasis added.]

"In sum, we believe we fairly state the point when we say that the privilege need only give way when disclosure of the informant's identity would be vital to a fair trial." *Martinez, supra* at 921.

IV

The facts of the present case do not present that exceptional circumstance in which an in camera hearing is warranted to determine if disclosure of the informant's identity is vital to a fair trial. As noted above, the informant neither witnessed nor participated in the assault and robbery at issue. According to a Michigan State Police incident

report, the informant advised police that another inmate told the informant, inter alia, that it was the inmate and a third party, not the defendant, who committed the robbery and assault, and that "dog" had served as a lookout.

The defendant asserts that the informant's testimony is essential to his defense because it calls into question both the prosecution's allegation that it was defendant who committed the assault and robbery of the Department of Corrections employee as a principal, and whether defendant, as a lookout, possessed the requisite intent to commit murder or had knowledge that the principals possessed the specific intent to commit that crime necessary for conviction for assault with the intent to commit murder.

However, the defendant admits that the police report is, at the least, partially inculpatory. The information places the defendant, as "dog," in the position of an aider and abettor to the offenses committed.[3] The defendant argues that the informant's testimony would undermine the prosecutor's theory that defendant was a principal. The prosecutor's theory is supported by the presence of defendant's bloody fingerprint on the club used to assault the victim. The best that can be made of defendant's contention is that the jury might have believed part of the statement (they arrested the wrong person) and disbelieved the other ("dog" was the lookout). The defendant fails to demonstrate, however, that the information is

---

[3] Pursuant to MCL 767.39; MSA 28.979:

Every person concerned in the commission of an offense, whether he directly commits the act constituting the offense or procures, counsels, aids, or abets in its commission may hereafter be prosecuted, indicted, tried and on conviction shall be punished as if he had directly committed such offense.

exculpatory and trustworthy, or essential to his defense.

The jury was given instruction on the offense of assault with intent to commit great bodily harm less than murder as a lesser included offense to the principal charge of assault with intent to commit murder. The defendant did not allege in his defense that he participated in the crime, but lacked the mens rea of intent to commit murder necessary for conviction of the greater charge. As summarized by the majority, *ante* at 700-702, the defendant asserted that he did not participate in the assault at all, and at most was a mere accessory after the fact. Therefore, the informant's testimony, even where arguably exculpatory, fails to touch upon the defendant's theory of defense. Even in those federal cases where only a "minimal threshold showing" of relevance is necessary to require in camera review, that minimal relevance must be to at least one of the defendant's defenses. *United States v Spires*, 3 F3d 1234, 1238-1239 (CA 9, 1993); *United States v Sai Keung Wong*, 886 F2d 252, 256 (CA 9, 1989).

The majority states that the informant's testimony, although admittedly inculpatory, might tend to "mitigate defendant's culpability, or participation, thereby giving the jury the opportunity to return a verdict on a lesser included offense." *Ante* at 709, n 11. However, as I have noted, on its face the informant's statement to the police is that the defendant was an aider or abettor. The only possibly helpful import of admission of the informant's testimony would be to invite the jury to return a compromise verdict that would find the defendant guilty of a lesser offense because he was not as bad as the absent actors. This evidence is irrelevant to

defendant's defense that he knew nothing about the crime in advance of its occurrence.[4]

Although "dog" is not positively identified in the informant's statement to the police as the defendant, defense counsel does not deny that defendant is "dog." If "dog" was not the defendant, his trial counsel would have logically argued that the informant's statement was *completely* exculpatory, identifying three other persons as the perpetrators of the crime. Appellate counsel commendably admitted both in his brief and oral argument to this Court that the informant's statement to the police was inculpatory in that defendant was identified in that statement as a lookout, aiding in the commission of the crimes. That portion of the informant's communication therefore does not appear to be either "relevant or helpful" to the defendant's defense of being an accessory after the fact, even if that were the proper standard by which to measure the materiality of the informant's identity.

Finally, I find no factual or legal basis for the majority's statement that the informer's information may bear "on instructional and sentencing issues." *Ante* at 709. The informant's testimony would not provide any basis for an instructional issue other than aiding and abetting. Any lesser cognate offense instruction upon which it bears some relevance · is inconsistent with the defendant's theory of defense. The majority provides no precedent for the suggestion that an informant's identity should be disclosed because of its bearing on sentencing issues. Moreover, the police report of the informant's statement was before the trial judge and could be considered at sentencing. Disclosure of the informant's identity adds nothing to

---

[4] In addition, I question whether, even if admitted, the informant's testimony would have provided the basis for the cognate lesser included offense instruction given.

the evaluation of the statement in this context. The sentencing issue is nothing more than a repetition of the argument, irrelevant for trial purposes, that a distinction can be made between highly blameworthy criminals and those of lesser culpability.

V

In summary, I find no need to return this case to the circuit court for in camera review. The substantive content of the information provided by the informant is known to both the parties, as well as the trial judge. In camera review is not warranted by a mere minimal showing of relevance and should only be authorized where the defendant has demonstrated a reasonable probability that the informant's testimony is essential to his defense. The defendant in the present case has failed to make this demonstration of essential need. The content of the informant's statement not only fails to advance the defendant's position that he was, at most, an accessory after the fact to the robbery and assault, but inculpates the defendant as a participant in the crimes as a lookout. The trial court's decision was not clearly erroneous.

I would therefore affirm the decision of the Court of Appeals denying disclosure of the informant's privileged identity to the defendant.

RILEY, J., concurred with BOYLE, J.