# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

            Plaintiff-Appellee,

v

TAMARA LUCILLE HUDSON,

            Defendant-Appellant.

UNPUBLISHED
June 14, 2016

Nos. 326041; 326044;
     326045; 326046
Macomb Circuit Court
LC Nos. 2013-003906-FH;
      2013-003907-FH;
      2013-003908-FH;
      2013-003909-FH

Before: JANSEN, P.J., and O'CONNELL and RIORDAN, JJ.

PER CURIAM.

In these consolidated appeals, defendant, Tamara Lucille Hudson, appeals as of right her convictions concerning four separate illegal transactions, following a consolidated jury trial, of a total of four counts of delivery of marijuana, MCL 333.7401(2)(d)(*iii*), four counts of maintaining a drug vehicle, MCL 333.7405(1)(d), and one count of possession with intent to deliver marijuana, MCL 333.7401(2)(d)(*iii*). The trial court sentenced Hudson to complete 24 months' probation. We affirm Hudson's convictions, but reverse the restitution portion of Hudson's judgment of sentence in Docket No. 2013-003908-FH and remand.

## I. FACTUAL AND PROCEDURAL BACKGROUND

According to Clinton Township Police Department Detective Jeffrey Brooks, a confidential informant referred Hudson to him as a possible source of illegal marijuana. Detective Brooks contacted Hudson by telephone and requested to purchase one ounce of marijuana. Detective Brooks and Hudson met four times to exchange money for marijuana. Officers arrested Hudson immediately after the fourth transaction.

Before trial, Hudson moved to dismiss her charges on the basis of entrapment. Hudson argued that Detective Brooks induced her to perform illegal acts through the use of the confidential informant, who Hudson assumed was the "friend" who called earlier that day to ask Hudson to assist a "patient" of his. Hudson admitted that Detective Brooks never specifically said he was the "patient" her friend had asked her to help, Detective Brooks never mentioned medical marijuana, and she never asked Detective Brooks for a patient identification. At a continued entrapment hearing, Detective Brooks ultimately admitted that the informant was

-1-

Hudson's "friend." The trial court found that there was insufficient evidence that Detective Brooks had entrapped Hudson and denied her motion to dismiss.

## II. ENTRAPMENT

Hudson first argues that the trial court erred when it denied her motion to dismiss the charges on the basis that insufficient evidence supported her entrapment defense. We disagree.

This Court reviews de novo whether the police entrapped a defendant and reviews its findings supporting its determination for clear error. *People v Vansickle*, 303 Mich App 111, 114; 842 NW2d 289 (2013). The trial court's findings are clearly erroneous if we are definitely and firmly convinced that it made a mistake. *Id*. at 115.

Entrapment is an affirmative defense that may bar a prosecution. *People v Juillet*, 439 Mich 34, 52; 475 NW2d 786 (1991). The purpose of this defense is to deter abuse of police authority by precluding criminal liability for acts that the police instigated. *Id*. In other words, the entrapment defense exists to prevent the police from "the instigation or manufacturing of new crime." *Id*.

The defendant has the burden to prove entrapment by a preponderance of the evidence. *Id*. at 61. A defendant may establish an entrapment defense in one of two ways: "(1) the police engaged in impermissible conduct that would induce a law-abiding person to commit a crime in similar circumstances or (2) the police engaged in conduct so reprehensible that it cannot be tolerated." *People v Johnson*, 466 Mich 491, 498; 647 NW2d 480 (2002). The police do not engage in entrapment by merely providing a defendant an opportunity to commit a crime. *Id*.

First, Hudson contends that the police engaged in impermissible conduct to induce her to commit the crime. To determine whether the police induced a law-abiding citizen to commit a crime, the trial court considers a variety of factors:

> (1) whether there existed appeals to the defendant's sympathy as a friend, (2) whether the defendant had been known to commit the crime with which he was charged, (3) whether there were any long time lapses between the investigation and the arrest, (4) whether there existed any inducements that would make the commission of a crime unusually attractive to a hypothetical law-abiding citizen, (5) whether there were offers of excessive consideration or other enticement, (6) whether there was a guarantee that the acts alleged as crimes were not illegal, (7) whether, and to what extent, any government pressure existed, (8) whether there existed sexual favors, (9) whether there were any threats of arrest, (10) whether there existed any government procedures that tended to escalate the criminal culpability of the defendant, (11) whether there was police control over any informant, and (12) whether the investigation was targeted. [*Id*. at 498–499.]

In this case, while there was police control over an informant and the investigation was targeted, the balance of the factors favor the conclusion that Detective Brooks did not entrap Hudson. Hudson admitted that Brooks did not threaten her, offer her companionship or sexual favors, or exert pressure. Detective Brooks testified that he simply asked Hudson to sell him some marijuana, and she agreed. While Detective Brooks knew Hudson through a "friend," he

did not pretend to be her friend or attempt to gain her sympathy in that way. The consideration was not excessive. There were no long time lapses between the investigation and the arrest: Hudson was arrested immediately after the fourth transaction, which occurred less than three weeks after the investigation began.

Finally, presuming that the friend did in fact ask Hudson to care for a "patient" while he was away, this is not the kind of pressure that would induce an otherwise law-abiding citizen to commit a crime. The conversation was brief, and Hudson did not undertake methods to ensure the transaction was legal, such as asking for a medical marijuana card, and Detective Brooks did not assure her that it was in fact legal. We are not definitely and firmly convinced that the trial court made a mistake when it found that Detective Brooks did not engage in any conduct that would have convinced an ordinary, law-abiding citizen to commit a crime.

Second, Hudson contends that Detective Brooks and the confidential informant's deceptions together constituted reprehensible conduct. We again disagree.

"An official may employ deceptive methods to obtain evidence of a crime as long as the activity does not result in the manufacturing of criminal behavior." *Vansickle*, 303 at 117 (quotation marks and citation omitted). In this case, even if Detective Brooks asked the friend to introduce him to Hudson as a "patient" who required medical marijuana, this is nothing more than a deceptive method that gave Hudson an opportunity to commit a crime. We are not definitely and firmly convinced that the trial court made a mistake when it found that the police behavior in this case was not reprehensible.

III. CONFRONTATION

Hudson next argues that the trial court deprived her of her constitutional rights to a fair trial and to confront the witnesses against her when it failed to order the prosecution to produce the friend at trial. We disagree.

This Court reviews for an abuse of discretion the trial court's decision whether to order production of a confidential informant. *People v Henry (After Remand)*, 305 Mich App 127, 156; 854 NW2d 114 (2014). The trial court abuses its discretion when it chooses an outcome that falls outside the range of principled outcomes. *Id*. We review de novo questions of constitutional law. *Id*.

Both the United States and Michigan constitutions provide that the state cannot deny a person "life, liberty, or property without due process of law." US Const, Am XIV; Const 1963, art 1, § 17. Thus, criminal prosecutions must comply with "prevailing notions of fundamental fairness." *People v Anstey*, 476 Mich 436, 460; 719 NW2d 579 (2006) (quotation marks and citation omitted). Similarly, both constitutions protect a defendant's right to confront the witnesses against him- or herself. US Const, Am VI; Const 1963, art 1, § 20. The trial court may not deny a defendant "a reasonable opportunity to test the truth of a witness' testimony." *People v Hackett*, 421 Mich 338, 347; 365 NW2d 120 (1984).

The prosecution need not disclose the identity of a confidential informant. *Henry*, 305 Mich App at 156. This privilege does not apply when the confidential informant can provide information that "is either relevant and helpful to the defense of an accused, or is essential to a

fair determination of a cause." *People v Underwood*, 447 Mich 695, 704; 526 NW2d 903 (1994) (quotation marks and citation omitted). When a defendant demonstrates a possible need for the informant's testimony, a trial court should conduct an *in camera* hearing with the informant to determine if the informant could offer any testimony beneficial to the defense. *Id*. at 705-706. "Whether a defendant has demonstrated a need for the testimony depends on the circumstances of the case and a court should consider the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." *Henry*, 305 Mich App at 156 (quotation marks and citation omitted).

In this case, while the trial court did not require the prosecution to produce the confidential informant, Hudson was aware of the informant's identity. Detective Brooks admitted at the entrapment hearing that Hudson's "friend" was the person who introduced him to Hudson. The trial court specifically advised Hudson to call the friend to the stand to question him about his involvement at the hearing, but Hudson did not do so. We conclude that the trial court did not abuse its discretion by declining to require the prosecution to produce the informant, and we reject Hudson's assertion that she is entitled to an in camera hearing.

## IV. RESTITUTION

Hudson contends that the trial court erred improperly by ordering her to pay $250 in restitution in connection with the charges in her fourth case, No. 2013-003908-FH, because police officers recovered the "buy money" in that case during Hudson's arrest. The prosecution concedes this issue.

We affirm Hudson's convictions, but reverse the restitution portion of Hudson's judgment of sentence in No. 2013-003908-FH (ordering Hudson to pay $250) and remand. We do not retain jurisdiction.

/s/ Kathleen Jansen
/s/ Peter D. O'Connell
/s/ Michael J. Riordan

-4-