*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

NICHOLAS RANDOLPH RIVARD,

        Defendant-Appellant.

UNPUBLISHED
May 30, 2024

No. 364638
Menominee Circuit Court
LC No. 2021-004348-FH

Before: BORRELLO, P.J., and SWARTZLE and YOUNG, JJ.

PER CURIAM.

A jury found defendant guilty of two counts of delivery of methamphetamine, MCL 333.7401(2)(b)(*i*), two counts of delivery of less than 50 grams of a mixture containing fentanyl, MCL 333.7401(2)(a)(*iv*), and one count of maintaining a drug house, MCL 333.7405(1)(d); MCL 333.7406. The trial court sentenced defendant as a third-offense habitual offender, MCL 769.11, to concurrent prison terms of 90 months to 40 years for the delivery convictions and 32 months to 4 years for maintaining a drug house. Defendant appeals by right. For the reasons set forth in this opinion, we affirm.

## I. BACKGROUND

This case arises out of three instances in which defendant sold drugs to undercover law enforcement officers at his home. On February 15, 2021, defendant sold a bag of methamphetamine to an undercover officer, Wisconsin Department of Justice Senior Special Agent Dennis Carroll, and a confidential informant. On March 17, 2021, defendant sold fentanyl and two small bags of methamphetamine to two undercover officers, Forest County, Wisconsin, Sheriff's Office Detective Sergeant Tony Crum and Detective Sergeant Darrell Wilson.[1] Finally,

---

[1] Forest County, Wisconsin, borders the Upper Peninsula of Michigan, and the Forest County Sheriff's Office and the Menominee County Sheriff's Office are both part of the Northeast Tri-County Enforcement Group.

on August 11, 2021, defendant sold a bag of fentanyl to Detective Sergeant Crum and Detective Sergeant Wilson.

## II. ENTRAPMENT

Defendant first argues that the trial court erred by denying his motion to dismiss on the basis of entrapment.

This Court reviews "de novo as a matter of law whether the police entrapped a defendant, but the trial court's specific findings of fact are reviewed for clear error." *People v Vansickle*, 303 Mich App 111, 114; 842 NW2d 289 (2013). "Findings of fact are clearly erroneous if we are left with a firm conviction that the trial court made a mistake." *Id*. at 115. Further, this Court does not substitute its judgment for that of the trial court on issues of credibility. See *People v Martin*, 199 Mich App 124, 125; 501 NW2d 198 (1993) (declining to substitute this Court's judgment for that of the trial court regarding which testimony to believe when the record contained widely divergent testimony on an entrapment claim).

Defendant has the burden of proving by a preponderance of the evidence that he was entrapped. *People v Johnson*, 466 Mich 491, 498; 647 NW2d 480 (2002). "Entrapment occurs if (1) the police engage in impermissible conduct that would induce an otherwise law-abiding person to commit a crime in similar circumstances or (2) the police engage in conduct so reprehensible that the court cannot tolerate it." *Vansickle*, 303 Mich App at 115 (quotation marks and citation omitted); accord *Johnson*, 466 Mich at 498. Defendant argues that the first form of entrapment is applicable here.[2] This Court considers the following factors to determine whether the police impermissibly induced a defendant to commit a crime:

> (1) whether there existed appeals to the defendant's sympathy as a friend, (2) whether the defendant had been known to commit the crime with which he was charged, (3) whether there were any long time lapses between the investigation and the arrest, (4) whether there existed any inducements that would make the commission of a crime unusually attractive to a hypothetical law-abiding citizen, (5) whether there were offers of excessive consideration or other enticement, (6) whether there was a guarantee that the acts alleged as crimes were not illegal, (7) whether, and to what extent, any government pressure existed, (8) whether there existed sexual favors, (9) whether there were any threats of arrest, (10) whether there existed any government procedures that tended to escalate the criminal culpability of the defendant, (11) whether there was police control over any informant, and (12) whether the investigation was targeted. [*Vansickle*, 303 Mich App at 115, quoting *Johnson*, 466 Mich at 498-499 (quotation marks omitted).]

"The police do not engage in entrapment by merely providing a defendant with the opportunity to commit a crime." *Vansickle*, 303 Mich App at 115. When addressing a claim of entrapment, we primarily consider police conduct, but we also "consider the circumstances of the defendant to determine whether the police conduct would induce a similarly situated person, with

---

[2] We therefore will not address the second form of entrapment in this opinion.

an otherwise law-abiding disposition, to commit the charged crime." *People v Akhmedov*, 297 Mich App 745, 752-753; 825 NW2d 688 (2012) (quotation marks and citation omitted). The purpose of the entrapment defense is "to deter abuse of authority by precluding criminal liability for acts that were instigated by the police and committed by those not predisposed to such acts." *Id*. at 752.

At the hearing on defendant's motion to dismiss on the basis of entrapment, defendant's testimony contrasted greatly with the testimony of the three undercover officers. Defendant testified that he did not sell drugs to the confidential informant and Special Agent Carroll on February 15, 2021, and instead merely offered to share his personal supply of methamphetamine with them. Defendant stated that the confidential informant and Special Agent Carroll used some of his methamphetamine that he left on the table for them while he was out of the room and that they left $70 on the table for defendant to "turn [his] phone on," despite defendant's insistence that they not leave him any money. Defendant also testified that Special Agent Carroll tried to pressure him into selling drugs by making up a story regarding a friend who was "dope sick," or going through withdrawal, and needed to obtain drugs. In contrast, Special Agent Carroll testified that he did not make up a story about a "dope sick" woman to pressure defendant into selling drugs to them and that it was clear from his discussion with defendant that a sale of methamphetamine was being negotiated. Special Agent Carroll also testified that he declined defendant's offer to use the methamphetamine during the course of the transaction. According to Special Agent Carroll, he and defendant negotiated the final price of the methamphetamine.

Additionally, defendant testified that during the second and third transactions, officers were "blowing [him] up," knocking excessively on his doors and windows, intimidating him, and offering to buy drugs from him at a price much higher than street value. Defendant testified that he felt like he had to interact with these law enforcement officers because the confidential informant was threatening him. However, Detective Sergeant Crum and Detective Sergeant Wilson both testified that they did not pressure or threaten defendant, that their interactions with defendant were cordial, and that they negotiated prices with defendant.

The trial court found the officers' testimony more credible than defendant's testimony. We do not interfere with a trial court's credibility assessments. See *Martin*, 199 Mich App at 125. We discern no clear error in the trial court's factual findings.

Furthermore, the record supports the trial court's conclusion that the officers did not impermissibly induce defendant to engage in criminal conduct. The evidence showed that defendant negotiated prices with the officers, prearranged visits to sell them drugs, invited them into his house, and exchanged drugs for money. There was no evidence that defendant was given any guarantees that his actions were not illegal, and there was no evidence of sexual favors or threats of arrest. The officers testified that their interactions with defendant were cordial and that they did not threaten or pressure defendant to make the sales. Detective Sergeant Wilson testified that he was not personally involved in the communications between the confidential informant and defendant. Defendant thus failed to show that factors one, six, seven, eight, nine, ten, or eleven weighed in favor of finding impermissible police inducement.

Defendant admitted that he had a long history of using and abusing controlled substances including methamphetamine, heroin, fentanyl, cocaine, Subutex, Ritalin, and marijuana. He

claimed that he only kept an amount of drugs sufficient for his personal use at his house, that he never sold drugs before, and that he did not have a reputation for selling drugs. However, defendant also admitted that he had previously been convicted of possession with intent to deliver heroin and possession of heroin. Regarding factor two, the evidence thus supported the trial court's conclusion that defendant did not lack the predisposition to commit the charged offenses.

Defendant testified that 8 months elapsed between the first incident on February 15 and his arrest. Though a lapse in time relative to drug transactions, the evidence of the additional drug sales shows that the investigation was ongoing and that there was not actually too long a lapse between the end of the investigation and defendant's arrest. Defendant failed to show that factor three favored a finding of entrapment.

Defendant claimed that the officers offered to pay him approximately three times the street value for the fentanyl sold in the second and third transactions, which could, if believed, suggest that factors four and five should weigh in defendant's favor. However, there was also officer testimony that defendant negotiated the price and had asked for more money than originally offered because defendant stated that he needed to make more money on the transaction. Defendant has not shown that the trial court clearly erred by crediting the officer testimony and finding that the purchases were mutually negotiated, arms-length transactions that did not constitute improper inducement.

Regarding factor twelve, the officers' testimony reflected that defendant was targeted in this operation because they had information that he was selling drugs and they specifically went to his house to attempt to purchase drugs. However, it seems from the officer testimony that defendant was merely targeted as part of an investigation into criminal drug selling activity that defendant was already committing, which is not impermissible. See *People v Fyda*, 288 Mich App 446, 458; 793 NW2d 712 (2010) ("While [the defendant] was the target of the investigation, he was made so by his own actions.").

Considering all of the evidence in light of the above factors, defendant has not shown that the trial court erred by finding that a preponderance of the evidence did not show that the police engaged in impermissible conduct that would have induced an otherwise law-abiding person to commit a crime under similar circumstances. *Vansickle*, 303 Mich App at 115. Thus, the only evidence which could lead us to conclude that the officers engaged in impermissible conduct that would otherwise induce a law-abiding citizen to commit a crime in similar circumstances was defendant's testimony—which the trial court found to be lacking in credibility. *Id*. The officers merely presented "defendant with the opportunity to commit a crime," which is not entrapment. *Id*. Defendant has not shown on appeal that the trial court's factual findings on entrapment were clearly erroneous or that the trial court erred by concluding that entrapment did not occur and thus denying defendant's motion to dismiss. *Id*. at 114-115. The actions by law enforcement in this case "were insufficient to induce or instigate the commission of a crime by the average person, similarly situated to [defendant], who [was] not ready and willing to commit it." *Fryda*, 288 Mich App at 460 (quotation marks and citation omitted; alterations in original).

## III. CONFIDENTIAL INFORMANT PRODUCTION

In the second issue defendant raises on appeal, defendant begins by asserting that the trial court erred by "not requiring the production of the confidential informant at trial" and by "refusing to instruct the jury on the prosecution's failure to produce a witness." However, based on the legal authorities that defendant cites and the arguments advanced, it appears that defendant argues that he was entitled to disclosure of the confidential informant's identity and an *in camera* hearing for the trial court to examine the informant to determine whether the informant could provide testimony helpful to defendant's defense.

Defendant's appellate argument is puzzling since he undisputedly knew the identity of the confidential informant well before trial. The record reflects that before trial, defendant withdrew a motion for disclosure of the confidential informant because, according to defendant's trial counsel, the motion was "no longer necessary" and "we have found the informant's information." Thus, there is no dispute that defendant knew the name of the confidential informant before trial, and he referred to her by name during his testimony at the entrapment hearing. The prosecution's most recent pretrial amended witness list, filed approximately 6 months before trial, did not include the confidential informant as a witness.

Five days before trial, the trial court granted defendant's untimely request for reasonable efforts from the state in serving a subpoena on the confidential informant to testify at trial. These efforts were apparently unsuccessful. The record indicates that the officer in charge, Menominee County Sheriff's Office Detective Sergeant Greg Peterson, contacted the confidential informant by telephone, and the confidential informant refused to provide her address and refused to testify at trial. According to Detective Sergeant Peterson, the informant indicated that she no longer lived in Michigan and that she was fearful because she had been threatened by defendant's sister.

On appeal, defendant argues that the trial court should have examined the confidential informant *in camera* pursuant to *People v Underwood*, 447 Mich 695; 526 NW2d 903 (1994). As this Court has explained, "Generally, the people are not required to disclose the identity of confidential informants," *People v Henry (After Remand)*, 305 Mich App 127, 156; 854 NW2d 114 (2014) (quotation marks and citation omitted), but "when a defendant demonstrates a possible need for the informant's testimony, a trial court should order the informant produced and conduct an in camera hearing to determine if the informant could offer any testimony beneficial to the defense," *id*., citing *Underwood*, 447 Mich at 705-706. Our Supreme Court explained the purpose of an *in camera* hearing in these circumstances as follows:

> Thus, where the government invokes the privilege [to withhold the confidential informant's identity] in the face of a defense request for disclosure, and where the accused is able to demonstrate a possible need for the informant's testimony, the trial judge should require production of the informant and conduct a hearing in chambers, and out of the presence of the defendant. At this hearing the court will have an opportunity to examine the informant in order to determine whether he could offer any testimony helpful to the defense. A record should be made of the in camera session and its contents sealed so that only an appellate court will have access thereto.

By employing this procedure, the trial court will be in a position to weigh the competing interests of the parties and to make a determination whether the informant should be produced. [*Underwood*, 447 Mich at 706-707.]

Thus, the issue to be addressed by an *in camera* hearing under *Underwood* is whether the identity of the confidential informant should be disclosed. Here, it does not appear from the record that defendant ever requested an *Underwood* hearing in the trial court, and defendant does not claim to have requested such a hearing. Furthermore, defendant undisputedly knew the identity of the confidential informant well before trial and thus would not have had any reason to request such a hearing. Accordingly, defendant has failed to demonstrate on appeal that he is entitled to his requested relief of an *in camera* hearing pursuant to *Underwood*. Moreover, defendant waived this issue by voluntarily withdrawing his motion in the trial court to disclose the confidential informant's identity. See *People v Bergman*, 312 Mich App 471, 490; 879 NW2d 278 (2015) (holding that the defendant waived the right to a defense investigator by moving in the trial court for the appointment of an investigator and voluntarily withdrawing the motion before it was decided, which precluded appellate review of the defendant's claim that the trial court erroneously denied her motion for appointment of an investigator). Waiver "is the intentional relinquishment or abandonment of a known right," and a "waiver extinguishes any error, leaving no error to review." *Id*., citing *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000).

Affirmed.

/s/ Stephen L. Borrello
/s/ Brock A. Swartzle
/s/ Adrienne N. Young

-6-