PEOPLE v STANDER

1. WITNESSES—CRIMINAL LAW—INFORMANTS—PRESERVATION OF ANO-
NYMITY—FAIR DETERMINATION—FUNDAMENTAL FAIRNESS—
HEARINGS.

The prosecution's privilege of preserving the anonymity of an
informant must give way where the disclosure of the infor-
mant's identity or of the contents of his communication is
relevant and helpful to the defense of an accused, or is essen-
tial to a fair determination of the cause; where an accused is
able to demonstrate a possible need for an informant's testi-
mony, the particular circumstances of the case should be
considered by the trial judge at a recorded *in camera* hearing
held out of the presence of the defendant, where the court may
examine the informant to determine whether fundamental
fairness requires disclosure, taking into consideration the crime
charged, the possible defenses, the possible significance of the
informant's testimony and other relevant factors.

2. CRIMINAL LAW—EVIDENCE—IMPEACHMENT—CREDIBILITY—INDEPEN-
DENT ADMISSIBILITY—PRIOR BAD ACTS—LIKE ACTS—STATUTES.

Evidence of an arrest which did not result in a conviction is
inadmissible for purposes of impeaching the credibility of a
witness, but that does not prevent its introduction where it is
independently admissible under the similar acts statute or, if
the prior act is regarded as a misdemeanor, where the evidence
is properly admissible as a like act under the statute (MCLA
768.27; MSA 28.1050).

REFERENCES FOR POINTS IN HEADNOTES
[1] 21 Am Jur 2d, Criminal Law § 332.
Accused's right to and prosecution's privilege against, disclosure of
identity of informer. 76 ALR2d 262.
[2] 29 Am Jur 2d, Evidence § 320 *et seq.*
[3] 30 Am Jur 2d, Evidence §§ 1080–1090.
[4] 29 Am Jur 2d, Evidence § 324.
[5] 29 Am Jur 2d, Evidence § 323.
[6] 29 Am Jur 2d, Evidence § 555 *et seq.*
Necessity of informing suspect of rights under privilege against self-
incrimination, prior to police interrogation. 10 ALR3d 1054.

3. EVIDENCE—PROBATIVE VALUE—RELEVANCE—MATERIALITY—DIS-
   PUTE OF FACT—PREJUDICIAL EFFECT—PROBATIVE VALUE.

   Evidence that has any probative value as to the fact which is
   sought to be proved is relevant if the fact sought to be proved is
   not disputed; even if evidence is relevant and material it may
   still be excluded if the prejudicial effect greatly outweighs its
   probative value.

4. CRIMINAL LAW—EVIDENCE—PRIOR BAD ACTS—CROSS-EXAMINATION
   —CASE IN CHIEF—MATERIALITY.

   Evidence of a prior bad act of a defendant, which was offered
   during the cross-examination of a defense witness by the prose-
   cution to prove the defendant's intent or absence of mistake
   under the similar acts statute and which did not become
   material until the defendant disclosed his theory of the case,
   was not required to be presented in a prosecutor's case in chief
   (MCLA 768.27; MSA 28.1050).

5. CRIMINAL LAW—EVIDENCE—AUTOMOBILES—THEFT—SIMILAR ACTS—
   SAME COPARTICIPANT—INNOCENT PARTICIPATION—GUILTY
   KNOWLEDGE.

   Proof that a defendant had been involved in an almost identical
   car theft with the same coparticipant was probative of guilty
   knowledge, and was clearly admissible to refute the defendant's
   claim of innocent participation; where a trial judge finds that
   the probative value of such evidence outweighs its prejudicial
   impact the ruling will not be disturbed on appeal absent an
   abuse of discretion.

6. CRIMINAL LAW—INTERROGATION—REQUESTS TO TERMINATE—TIME—
   MIRANDA WARNINGS—RESUMPTION OF INTERROGATION.

   A police officer is not prohibited from resuming interrogation of a
   person in custody who has expressed a desire to cut off ques-
   tioning, where a significant period of time has passed and a
   fresh set of *Miranda* warnings has been given.

Appeal from Wayne, Thomas J. Foley, J. Sub-
mitted May 6, 1976, at Detroit. (Docket No. 25659.)
Decided September 8, 1976; opinion amended Feb-
ruary 24, 1977.

Charles J. Stander was convicted of unlawfully
driving away an automobile. Defendant appeals.

The case was heard and decided. The prosecution applied for rehearing. Rehearing granted. On rehearing the Court ordered its opinion amended and ordered remand for further proceedings.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Patricia J. Boyle,* Principal Attorney, Research, Training and Appeals, and *Robert M. Morgan,* Assistant Prosecuting Attorney, for the people.

*F. Michael Schuck, III,* Assistant State Appellate Defender, for defendant.

Before: Bronson, P. J., and D. E. Holbrook, Jr. and D. F. Walsh, JJ.

Per Curiam. Defendant was convicted by a jury in Wayne County Circuit Court on May 21, 1974, of unlawfully driving away an automobile, MCLA 750.413; MSA 28.645. He was sentenced to a term of 2-1/2 to 5 years in prison and now appeals as of right raising eight assignments of error.

Shortly after 5 p.m. on March 20, 1974, Sergeant Gerald Schornack of the Redford Township police department received a phone call from an informant who stated that "Floyd" and one or two others intended to steal an automobile later that evening. The officer was told that the vehicle was parked on Lyndon Street in Livonia. At about 11 p.m. Sergeant Schornack and Sergeant Ericson of the Livonia police department took up surveillance of a late model Camaro parked in a resident's driveway at 29527 Lyndon Street. At 1:45 a.m. the next morning two individuals (later identified as Giorgio Raguso and Elton Mizel, also known as

Floyd Blount), were observed in front of the premises under observation and walking about the Camaro. The pair left the scene and returned 40 minutes later accompanied by defendant. After Mizel had gained entry to the vehicle with a wire tool, Raguso and the defendant pushed the car out of the driveway. Mizel drove the car for a block or two and was immediately apprehended by police. Raguso and defendant fled on foot and were caught in a nearby yard.

Stander's defense was that he had assisted Mizel and Raguso under the mistaken impression that they were involved in a legal repossession of the Camaro. This theory was bolstered by the testimony of Mizel and Raguso; defendant declined to take the stand.

During cross-examination of Sergeant Schornack defense counsel attempted to elicit the identity of the informant. When the witness refused to disclose the name, the jury was excused and counsel urged the court that disclosure was critical to the defense because that individual might have information favorable to his client. The trial judge denied this request and counsel resumed cross-examination. Defendant now contends that the court's failure to require production of the informant was reversible error because, as a matter of law in Michigan, the informant was a res gestae witness and secondly, that he was entitled to disclosure of the informant's identity under the requirements of "fundamental fairness" as set forth in *Roviaro v United States,* 353 US 53; 77 S Ct 623; 1 L Ed 2d 639 (1957). The people dispute the informant's status as a res gestae witness and further urge that disclosure of his identity was not required under the "fundamental fairness" doctrine since he was not a "material witness on the

issue of guilt". *People v Wenrich,* 31 Mich App 644, 648; 188 NW2d 102 (1971), *People v Phelps,* 57 Mich App 300, 305; 225 NW2d 738 (1975).

Treating the second part of defendant's contention we note that the *Roviaro* decision involved a government informer who played a key role in a heroin transfer scheme and who was instrumental in setting up the transaction. The Supreme Court there found that the informant was a "material witness" who might have been able to offer testimony favorable to the defendant in the areas of guilty knowledge or a possible entrapment defense. Defendant's "vital need for access to any material witness" outweighed the government interest in concealing the informant's identity and, under those particular facts, principles of fundamental fairness required disclosure. *Roviaro v United States,* 353 US 53, 63; 77 S Ct 623, 629; 1 L Ed 2d 639, 647 (1957).

The purpose for the "informant's privilege", as it is sometimes called, is to encourage citizens to communicate information regarding criminal activity to law enforcement agencies by preserving their anonymity. However, the court in *Roviaro* did recognize a limitation on the applicability of the privilege arising from the "fundamental requirements of fairness".[1] We adopt the following edited passage from Justice Burton's majority opinion:

"Where the disclosure of an informer's identity, or of

---

[1] *Roviaro v United States,* 353 US 53, 61; 77 S Ct 623, 628; 1 L Ed 2d 639, 645 (1957). The *Roviaro* "fairness doctrine", as it directly relates to the rules governing disclosure of evidence valuable to the accused, was the wellspring for this Court's recent decision requiring prosecutors to furnish dossiers of members of a jury panel which had been compiled by local police agencies. *People v Aldridge,* 47 Mich App 639; 209 NW2d 796 (1973). *But see, contra, People v Stinson,* 58 Mich App 243, 256–258; 227 NW2d 303 (1975).

the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way.

* * *

"We believe that no fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." *Roviaro v United States,* 353 US at 60–62; 77 S Ct at 628–629; 1 L Ed 2d at 645–646 (fn omitted.)

The procedural vehicle generally recognized as being the most useful for helping a trial judge to strike the appropriate balance between these competing interests is the *in camera* hearing, see *e.g., United States v Jackson,* 384 F2d 825 (CA 3, 1967), *cert den,* 392 US 932 (1968), *United States v Freund,* 525 F2d 873 (CA 5, 1976), *United States v Lloyd,* 400 F2d 414 (CA 6, 1968), *United States v Doe,* 525 F2d 878 (CA 5, 1976), *United States v Rawlinson,* 487 F2d 5 (CA 9, 1973), *cert den,* 415 US 984 (1974), *United States v Winters,* 420 F2d 523 (CA 3, 1970).

Thus where the government invokes the privilege in the face of a defense request for disclosure, and where the accused is able to demonstrate a possible need for the informant's testimony, the trial judge should require production of the informant and conduct a hearing in chambers, and out of the presence of the defendant. At this hearing the court will have an opportunity to examine the informant in order to determine whether he could offer any testimony helpful to the defense. A rec-

ord should be made of the *in camera* session and its contents sealed so that only an appellate court will have access thereto.

Other appropriate measures may be taken by the trial court so that the identity of the informant will remain undisclosed in the event the court determines that fundamental fairness does not require that the informant be produced as a witness at trial.

We are aware of our limited rule-making powers, Const 1963, art 6, § 5, *People v Aldridge,* 47 Mich App 639, 652; 209 NW2d 796 (1973) (dissenting opinion of DANHOF, J.); however, we suggest the use of this *in camera* hearing as a means of allowing limited disclosure, thereby protecting the government's interest in the free flow of information to law enforcement officials, while at the same time insuring the right of the accused to develop the testimony of every witness who may be able to furnish information helpful to his defense.

Accordingly, we remand this case to the circuit court with directions to conduct a hearing consistent with this opinion. If the trial judge finds that the informant could offer no testimony favorable to the defense, defendant's conviction shall be affirmed. A finding to the contrary shall require reversal and a new trial. We do not retain jurisdiction.

We proceed to discuss two of the remaining seven issues because of their importance and the likelihood of recurrence in the event of a new trial.

During cross-examination of defense witness Mizel, the assistant prosecuting attorney was permitted, over objection, to introduce evidence of a prior auto theft involving both Mizel and the defendant. Mizel's March 19, 1973, plea-based con-

viction was offered to refute the defense theory that defendant had participated in the instant transaction without the intent to steal, but rather with the impression that he was helping to repossess the automobile. The defendant attacks the admission of this evidence on several grounds.

First, defendant contends that the subject matter sought to be introduced was in reality an arrest not resulting in a conviction on the grounds that Mizel had pled to a misdemeanor under the Holmes youthful trainee act, MCLA 762.14; MSA 28.853(14). Evidence of an arrest not resulting in conviction is inadmissible for purposes of impeaching the credibility of a witness. *People v Falkner,* 389 Mich 682, 695; 209 NW2d 193 (1973). But that does not prevent its introduction where it is independently admissible under the so-called similar acts statute, MCLA 768.27; MSA 28.1050. See *People v Severance,* 43 Mich App 394, 398; 204 NW2d 357 (1972). Nor does *People v Renno,* 392 Mich 45; 219 NW2d 422 (1974), require exclusion, even if the prior act is regarded as a misdemeanor, if the evidence is properly admissible as a "like act" under the statute. MCLA 768.27; MSA 28.1050. See *People v Clark,* 62 Mich App 740, 747; 233 NW2d 856 (1975).

Second, defendant contends that this evidence, if admissible at all, more properly belonged in the people's case in chief. We disagree. Where a prior bad act is offered under the similar act statute, to prove defendant's intent or absence of mistake, two requirements must be met: (1) intent, or absence of mistake, must be "material" to the case; and (2) the act must be sufficiently similar to the charged offense so as to be probative of intent or absence of mistake. MCLA 768.27; MSA 28.1050, *People v Spillman,* 63 Mich App 256, 258–261; 234 NW2d 475 (1975).

Stander's guilty knowledge (absence of mistake) did not become material, and was not contested, until the theory of his defense was disclosed during the defendant's case. Although evidence of Stander's "prior bad act" would have been *relevant as tending to prove his guilty knowledge it would not have been material*[2] until his guilty knowledge became a disputed issue. Such evidence would have been properly excluded, therefore, if offered in the people's case in chief. It became a contested issue as soon as Mizel testified in support of the theory of defendant's innocent participation, and at that time it was the prosecutor's right and duty to offer evidence tending to negate this defense. *Cf. People v Spillman, supra.*[3]

Moreover, we are satisfied that the second requirement, that the prior act be sufficiently similar to the charged offense, was satisfied. Proof that defendant had been involved in an almost identical offense with the same coparticipant was probative of guilty knowledge, and clearly admissible to

[2] Evidence that has any probative value as to the fact which is sought to be proven is *relevant* evidence although it may be *immaterial* if the fact sought to be proven is not disputed. Even if evidence is relevant and material it may still be excluded if the prejudicial effect greatly outweighs its probative value.

As applied to evidence of "other bad acts", if such evidence tends to prove the defendant's "scheme, plan or system" or his "motive or intent" it is relevant. But if defendant's "scheme, plan or system" or his "motive or intent" are not disputed, the evidence would be immaterial and should be excluded. Finally, even if the evidence of defendant's "other bad acts" were relevant *and* material the trial judge could still exclude it if in his judgment the prejudicial effect greatly outweighed the probative value of the evidence.

[3] *People v Bennett,* 393 Mich 445; 224 NW2d 840 (1975), cited by defendant, provides that:

"Rebuttal is limited to the refutation of relevant and material evidence—hence evidence bearing on an issue properly raised in a case.

"Such issue of course could be one raised in the prosecutor's case in chief or one raised by way of defense, and evidence on either would be subject to rebuttal." *People v Bennett, supra,* 449.

refute defendant's claim of innocent participation. *People v Belen Johnson,* 62 Mich App 63, 73; 233 NW2d 188 (1975), *cf. People v Streetman,* 59 Mich App 49, 52; 228 NW2d 539 (1975). It was nevertheless the duty of the trial judge to determine if the prejudicial impact of the evidence would outweigh its probative value, *People v Belen Johnson, supra.* He ruled that it did not and we find no abuse of discretion in this ruling.

Finally, defendant challenges the admission of statements allegedly made by him while in police custody. A hearing was conducted on the first day of trial pursuant to *People v Walker (On Rehearing),* 374 Mich 331; 132 NW2d 87 (1965). We have reviewed the entire hearing transcript in order to make an independent determination of the issue of the voluntariness of these statements. *People v Robinson,* 386 Mich 551; 194 NW2d 709 (1972). We conclude that the statements were properly admitted.

Defendant's theory of exclusion of these statements is grounded on (1) *People v Mosley,* 51 Mich App 105; 214 NW2d 564 (1974), which held that the accused's assertion of his right to remain silent precludes any further questioning by police officers and renders any statements given in violation of the rule inadmissible, and (2) *People v McGillen #1,* 392 Mich 251; 220 NW2d 677 (1974), which held defendant's "highly ambiguous" statements involuntary and inadmissible because they had been secured through repeated questioning in violation of the *Mosley* decision and there was an apparently deliberate attempt by the police officer to alter his testimony from one trial to the next.

The *Mosley* decision was of course reversed on appeal to the United States Supreme Court well after the filing of defendant's brief. *Michigan v*

*Mosley,* 423 US 96; 96 S Ct 321; 46 L Ed 2d 313 (1975). It is now the law that where a person in custody expresses his desire to cut off questioning, a police officer is not prohibited from resuming interrogation "after the passage of a significant period of time and the provision of a fresh set of warnings". *Michigan v Mosley, supra,* 423 US at 106–107; 96 S Ct at 327–328; 46 L Ed 2d at 322.

We recognize the obvious differences between the officers' *Walker* hearing and trial testimony in the instant case, but we find no deliberate attempt to inflate or invent testimony as was apparently the case in *McGillen #1.* This factual distinction, in addition to the *McGillen #1* court's reliance upon an interpretation of *Miranda v Arizona*[4] which was invalidated in *Michigan v Mosley,* tend to undercut *McGillen #1* as authority for reversal here.

We have reviewed the defendant's remaining assignments of error and find them to be without merit. The case is remanded to the circuit court for proceedings consistent with this opinion.

---

[4] *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694; 10 ALR3d 974 (1966).