PEOPLE v WYNGAARD

Docket No. 182760. Submitted May 14, 1997, at Marquette. Decided December 12, 1997, at 9:05 A.M. Leave to appeal sought.

Raymond Wyngaard, an inmate at the Kinross Correctional Facility, was convicted by a jury in the Chippewa Circuit Court, Nicholas J. Lambros, J., of being a prisoner in possession of a controlled substance and of being a third-offense habitual offender. The defendant appealed.

The Court of Appeals *held*:

The defendant's convictions must be affirmed and the matter must be remanded for the trial court to conduct an in camera hearing in order to determine whether the confidential informant who told the prison guards that the defendant was in possession of marijuana can provide testimony helpful to the defendant. If the court finds that the informant could offer no testimony favorable to the defense, then the defendant's conviction must be affirmed. A contrary finding requires reversal and a new trial.

1. There is no merit to the defendant's claim that the double jeopardy prohibition was violated when he was tried for the instant offense after $874.84 was taken from his prisoner account pursuant to a civil forfeiture action based on the same offense.

2. The court erroneously determined that the defendant was required to demonstrate an actual, rather than a possible, need for the confidential informant's testimony before an in camera hearing to determine if the informant could offer testimony that would be helpful to the defendant would be deemed appropriate. The matter must be remanded for the court to conduct an in camera hearing.

3. The defendant received effective assistance of counsel.

4. There was sufficient evidence of intent. Specific intent is not an element of the offense.

Affirmed and remanded.

A holding by a majority of the panel was not reached with regard to an issue raised by the defendant concerning the use in his trial of evidence of admissions the defendant had made during prison administrative disciplinary proceedings regarding the same offense.

SAWYER, J., stated that the issue was not preserved for appellate review, does not present an important constitutional issue that is decisive of the outcome, and should not be reviewed.

MARKMAN, J., concurring in part and dissenting in part, stated that the issue should be addressed. The current prison disciplinary proceeding structures do not compel inmates to testify in disciplinary proceedings and, therefore, the Fifth Amendment privilege against compelled self-incrimination is not implicated by the use of such testimony in a subsequent criminal proceeding. Because *People v Carr*, 149 Mich App 653 (1986), found that prison inmates were compelled to speak at prison disciplinary proceedings, *Carr* was wrongly decided regarding this issue and should not be followed. It is not clear whether the defendant was advised at the disciplinary hearing that his testimony would not be admissible against him at a subsequent criminal trial on the underlying offense, as required by *Carr*. The matter should be remanded to determine whether the defendant was so advised. If he was so advised, and his testimony was in fact later used against him, elementary notions of due process would require that his conviction should be reversed, independent of any Fifth Amendment concerns. If he was not so advised, reversal of the conviction should not be required because the analysis of the Fifth Amendment issue in *Carr* was wrong.

O'CONNELL, P.J., dissenting, stated that the issue is an important constitutional issue that is decisive of the outcome and should be reviewed. The holding in *Carr* that any evidence derived from testimony at a disciplinary hearing is inadmissible at subsequent criminal proceedings regarding the underlying charge, save for impeachment or rebuttal, is outcome determinative of the case. The conviction should be reversed.

1. CRIMINAL LAW — EVIDENCE — CONFIDENTIAL INFORMANTS.

   A court considering a defendant's request that the prosecution be ordered to identify a confidential informant and make the informant available for examination at trial should conduct an in camera hearing and interview the informant outside the defendant's presence, thereby protecting the informant's anonymity, in order to determine if the informant could offer testimony that would be helpful to the defendant where the defendant demonstrates a possible need for the informant's testimony.

2. CRIMINAL LAW — PRISONERS IN POSSESSION OF CONTROLLED SUBSTANCES — SPECIFIC INTENT.

   Specific intent is not an element of the offense of being a prisoner in possession of a controlled substance (MCL 800.281[4]; MSA 28.1621[4]).

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, *Patrick M. Shannon*, Prosecuting Attorney, and *Jonathan C. Pierce*, Assistant Attorney General, for the people.

*John W. Groves*, for the defendant on appeal.

Before: O'CONNELL, P.J., and SAWYER and MARKMAN, JJ.

SAWYER, J. Defendant was convicted after a jury trial of being a prisoner in possession of a controlled substance, MCL 800.281(4); MSA 28.1621(4), and a third-offense habitual offender, MCL 769.11; MSA 28.1083. This case arose after defendant was found in possession of marijuana while an inmate at the Kinross Correctional Facility in Kincheloe, Michigan. Defendant appeals as of right. We affirm and remand for the trial court to conduct an in camera hearing in order to determine whether the confidential informant who told the prison guards that defendant was in possession of marijuana could provide testimony helpful to defendant.

Defendant first argues that his criminal conviction must be reversed because it violated his right to be free from double jeopardy, given that he had been already punished for this incident when $874.84 was taken from his prisoner account pursuant to a civil forfeiture action. We disagree. This Court recently addressed this issue in *People v Acoff*, 220 Mich App 396; 559 NW2d 103 (1996). Defendant has not provided the transcript of the civil forfeiture proceeding or any proof that the forfeiture was so punitive in purpose or effect that it was equivalent to a criminal proceeding. Therefore, defendant's double jeopardy claim is without merit. *Id.*

Defendant next argues that his rights to due process and a fair trial were denied where the trial court refused defendant's request that the prosecution be ordered to identify and make available for examination at trial the confidential informant who told the prison guards that defendant was in possession of marijuana. A confidential informant advised Captain Michael Zimmerman that defendant would be in possession of marijuana on the day he was detained and found in possession of marijuana. Defendant claimed that he did not know that the box he was given contained marijuana. He believed he had been set up by other inmates. Defendant asked that the informant be produced in hopes of eliciting testimony that would corroborate this defense theory.

When a defendant requests the production of a confidential informant, the court should conduct an in camera hearing and interview the informant outside the defendant's presence, thereby protecting the informant's anonymity, in order to determine if the informant could offer testimony that would be helpful to the defendant. *People v Underwood*, 447 Mich 695, 706; 526 NW2d 903 (1994); *People v Stander*, 73 Mich App 617, 622-623; 251 NW2d 258 (1977). The trial court erroneously determined that defendant was required to demonstrate an actual, rather than possible, need for the informant's testimony before the in camera hearing would be deemed appropriate. Consequently, we remand for the court to conduct this in camera hearing. If the trial court finds that the informant could offer no testimony favorable to the defense, then defendant's conviction shall be affirmed. A contrary finding shall require reversal and a new trial. *Stander*, at 623.

Defendant next argues that evidence of his admission regarding the instant offense, made at an administrative disciplinary proceeding, was erroneously admitted at trial because he was not given Miranda[1] warnings before the hearing at which he made this statement. However, defendant has failed to preserve this issue because he neither objected at trial nor raised the issue in his motion for a new trial. Furthermore, I am not persuaded that this presents an important constitutional issue that is decisive of the outcome. *People v Newcomb*, 190 Mich App 424, 431; 476 NW2d 749 (1991). Accordingly, I would decline to review the issue.

Defendant next argues that he was denied the effective assistance of counsel where his trial counsel elicited character evidence suggesting that defendant was a known drug dealer. We disagree. Defendant has not overcome the presumption that his trial counsel's actions were consistent with a trial strategy. Also, where there was overwhelming evidence of defendant's guilt, it cannot be said that there is a reasonable probability that the jury would have concluded differently. Thus, there was no ineffective assistance. *People v Stanaway*, 446 Mich 643, 687-688; 521 NW2d 557 (1994).

Finally, defendant argues that the crime of being a prisoner in possession of a controlled substance requires a showing of specific intent and that the prosecution failed to provide sufficient evidence to support a jury finding on this element. We disagree. Specific intent is not an element of this offense. *People v Norman*, 176 Mich App 271, 274-275; 438 NW2d

---

[1] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

895 (1989). Further, prosecution witnesses testified that defendant admitted knowing he was in possession of marijuana. Therefore, there was sufficient evidence of intent.

Affirmed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

MARKMAN, J., (*concurring in part and dissenting in part*). I concur with the conclusions of the lead opinion—affirming defendant's convictions but remanding to determine whether the testimony of the confidential informant should have been admitted—but disagree with the view that defendant's *Miranda*[1] claim need not be addressed.

On appeal, defendant argues that the trial court erroneously admitted into evidence admissions made at a disciplinary hearing because he was not given *Miranda* warnings before making the admissions. In *People v Carr*, 149 Mich App 653, 656; 386 NW2d 631 (1986), this Court held that "*Miranda* warnings do not apply at an administrative disciplinary hearing." I agree with this conclusion for the reasons set forth in *Carr*. However, the *Carr* Court also held that, "[q]uite aside from *Miranda*, defendant is entitled to other Fifth Amendment protections." *Id.* at 657. The Fifth Amendment provides, in pertinent part, that "No person . . . shall be compelled in any Criminal Case to be a witness against himself . . . ." US Const, Am V. The *Carr* Court found that inmates were *compelled* to speak at prison disciplinary proceedings:

---

[1] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

Under current practice, inmates must make a "Catch 22" choice. They can either testify at the prison disciplinary hearing and incriminate themselves or forego the right to offer exculpatory or mitigating statements and face the potential penalties for prison misconduct based on evidence which they cannot refute or explain. . . . But if an inmate's statements at the disciplinary hearing can be used against him in a subsequent criminal trial, it is likely that such statements will be withheld from the administrative hearing examiner for fear of being used against the inmate at a later time. The inmate . . . is forced to forego a valuable defense. This constitutes an impermissible penalty for the exercise of the privilege against self-incrimination. Even the Department of Corrections Hearing Handbook states that, while *Miranda* warnings are not required, no statement made by a prisoner at the prehearing interrogative stage or at formal hearings is admissible at a subsequent criminal proceeding. [*Carr, supra* at 658-659. Citation omitted.]

The *Carr* Court concluded at 659:

In the present case, defendant's admission at the disciplinary hearing actually served to reduce the severity of defendant's discipline. The penalty defendant thereafter suffered for speaking out was conviction at a subsequent criminal proceeding on the underlying offense. In our opinion the proper remedy is adoption of the procedure announced in [*People v*] *Rocha* [86 Mich App 497, 512; 272 NW2d 699 (1978)], *viz.*: any evidence derived from testimony at a disciplinary hearing is inadmissible at subsequent criminal proceedings on the underlying charge, save for impeachment or rebuttal, and the accused must be advised before testifying at the disciplinary hearing that his testimony will not be admissible against him at a subsequent criminal trial on the underlying offense.

As a practical matter, I note that testimony that an inmate would consider providing at a disciplinary hearing as exculpatory of a misconduct charge is likely also to be exculpatory regarding any related

criminal charges. The principal context in which an inmate's disciplinary hearing testimony conceivably could be incriminating in a subsequent criminal trial is when the inmate decides to admit to a lesser misconduct charge in hopes of proving that he did not commit a more serious misconduct charge.

Whether the use, in a subsequent criminal proceeding, of testimony given in a disciplinary hearing violates the Fifth Amendment  privilege against compelled self-incrimination turns on whether inmates are "compelled" to testify in disciplinary proceedings.[2] The United States Supreme Court has observed: " 'The [Fifth] Amendment  speaks of compulsion. It does not preclude a witness from testifying voluntarily in matters which may incriminate him.' " *Minnesota v Murphy*, 465 US 420, 427; 104 S Ct 1136; 79 L Ed 2d 409 (1984), quoting *United States v Monia*, 317 US 424, 427; 63 S Ct 409; 87 L Ed 376 (1943). [3] The *Carr* Court cited the following language from *Baxter v Palmigiano*, 425 US 308, 316; 96 S Ct 1551; 47 L Ed 2d 810 (1976),  in support of its conclusion: " 'if inmates are *compelled* in those proceedings to furnish testimonial evidence that might incriminate them in later criminal proceedings, they must be offered "whatever immunity is required to supplant the privilege" and may not be required to "waive such immu-

---

[2] I note that, here, defendant claims that he entered a guilty plea at the disciplinary hearing "to avoid possible harm and inmate retribution." However much these considerations might have contributed to making defendant's decision a difficult one, the Fifth Amendment  does not address "compulsion" derived from sources other than the government.

[3] "[T]he Fifth Amendment . . . prohibits coerced or involuntary confessions. . . . [T]o 'compel' a suspect to become a witness against himself can only mean to 'coerce' a suspect to become a witness against himself." Grano, Confessions, Truth, and the Law (Ann Arbor: The University of Michigan Press, 1993), p 135.

nity." ' " *Carr, supra* at 658. (Emphasis added.)[4] The *Carr* Court then cited *Garrity v New Jersey*, 385 US 493; 87 S Ct 616; 17 L Ed 2d 562 (1967), as an example of compulsion either "to testify or to face penalties for asserting [the] Fifth Amendment privilege to remain silent." *Carr, supra* at 658. In *Garrity*, police officers were informed that they were subject to dismissal from their jobs if they refused to answer questions in the course of an Attorney General investigation, i.e., they were subjected to a direct penalty for asserting the privilege against compelled self-incrimination. See also *Lefkowitz v Cunningham*, 431 US 801; 97 S Ct 2132; 53 L Ed 2d 1 (1977) (statute that divested a party officer of his office for refusal to answer questions or failure to waive "use" immunity when subpoenaed to appear before a grand jury violated the Fifth Amendment). These cases involved direct compulsion to incriminate oneself in the form of direct penalties placed on assertion of the privilege.[5]

The United States Supreme Court, however, has also addressed the issue of compelled self-incrimination in situations in which a party is merely faced with a difficult tactical choice in deciding whether to assert this privilege as opposed to direct compulsion to waive it or a direct penalty on assert-

---

[4] In *Baxter*, the inmate was advised that he was not required to testify at a prison disciplinary hearing but that his silence could be used against him; the Court concluded that allowing an adverse inference to be drawn from an inmate's silence at a disciplinary proceeding was valid. *Baxter*, 425 US 320. The *Baxter* Court was not faced with the issue whether an inmate is "compelled" to speak at a prison disciplinary proceeding.

[5] It is this type of *direct* penalty on assertion of the privilege against compelled self-incrimination that the *Garrity* Court referred to as "a choice between the rock and the whirlpool." *Garrity, supra* at 496.

ing this privilege. In *Williams v Florida*, 399 US 78, 83; 90 S Ct 1893; 26 L Ed 2d 446 (1970), the Court held that "the privilege against self-incrimination is not violated by a requirement that the defendant give notice of an alibi defense and disclose his alibi witnesses." It stated, at 83-84:

> The defendant in a criminal trial is frequently forced to testify himself and to call other witnesses in an effort to reduce the risk of conviction. When he presents his witnesses, he must reveal their identity and submit them to cross-examination which in itself may prove incriminating or which may furnish the State with leads to incriminating rebuttal evidence. That the defendant faces such a dilemma demanding a choice between complete silence and presenting a defense has never been thought an invasion of the privilege against compelled self-incrimination. The pressures generated by the State's evidence may be severe but they do not vitiate the defendant's choice to present an alibi defense and witnesses to prove it, even though the attempted defense ends in catastrophe for the defendant. However "testimonial" or "incriminating" the alibi defense proves to be, it cannot be considered "compelled" within the meaning of the Fifth and Fourteenth Amendments.

*United States v Rylander*, 460 US 752; 103 S Ct 1548; 75 L Ed 2d 521 (1983), involved contempt proceedings for failure to produce records for the Internal Revenue Service. The Court of Appeals had held that Rylander's assertion of his Fifth Amendment privilege required the government to bear the burden of producing evidence demonstrating that Rylander was able to produce the documents in question. The Supreme Court held at 758:

> [W]hile the assertion of the Fifth Amendment privilege against compulsory self-incrimination may be a valid ground upon which a witness such as Rylander declines to

answer questions, it has never been thought to be in itself a substitute for evidence that would assist in meeting a burden of production. We think the view of the Court of Appeals would convert the privilege from the shield against compulsory self-incrimination which it was intended to be into a sword whereby a claimant asserting the privilege would be freed from adducing proof in support of a burden which would otherwise have been his. None of our cases support this view.

We have squarely rejected the notion, apparently subscribed to by the Court of Appeals, that a possible failure of proof on an issue where the defendant had the burden of proof is a form of "compulsion" which requires that the burden be shifted from the defendant's shoulders to that of the government.

In *United States v One 1985 Plymouth Colt Vista*, 644 F Supp 1546 (ND Ill, 1986), the court followed *Rylander* in the context of a forfeiture proceeding. There, the claimant contended that he could meet his burden of proof regarding evidence of non-drug-related sources of funds for the car at issue only by incriminating himself. The *Plymouth Colt Vista* court concluded that the claimant's "dilemma"

is really no different from that faced by every criminal defendant forced to choose between complete silence and presenting a defense. By choosing silence the defendant incurs the risk the government, if it satisfies its burden of proof, will prevail. Yet that has never been thought to violate the privilege against self-incrimination. [*Id.* at 1552.]

The court further stated that *Rylander* stood for the proposition that the fact that a party must decide whether to remain silent in a hearing in which the burden of proof is less than proof beyond a reasonable doubt as required in a criminal trial does not constitute compulsion under the Fifth Amendment. *Id.*

*Rylander* and *Plymouth Colt Vista* indicate that even when a party has the burden of proof on an issue, the party's difficult decision whether to testify when the testimony could be used against him in a subsequent criminal proceeding does not constitute "compulsion" under the Fifth Amendment. A fortiori, a party's similar decision in a setting where he does not bear the burden of proof (e.g., a prison disciplinary hearing, as is at issue here) would not constitute compulsion under the Fifth Amendment.

In *Carr*, as here, there is no indication that inmates were *compelled* to furnish testimony at prison disciplinary hearings. In disciplinary hearings, there is no direct penalty placed on an inmate's assertion of the privilege against compelled self-incrimination. The hearing officer's decision must be based on a preponderance of the evidence. MCL 791.252(k);   MSA 28.2320(52)(k).   Therefore, an inmate's choice to remain silent will not automatically result in a determination that he has engaged in the misconduct with which he is charged; prison authorities must affirmatively satisfy the statutory burden of proof. See *Baxter, supra* at 317.[6] The tactical decision that an inmate must make regarding whether to testify at a disciplinary hearing, when his testimony might potentially be used against him in a subsequent criminal proceeding, while perhaps quite difficult, does not constitute

---

[6] See also *Murphy, supra* at 438:

   If Murphy did harbor a belief that his probation might be revoked for exercising the Fifth Amendment privilege, that belief would not have been reasonable. Our decisions have made clear that the State could not constitutionally carry out a threat to revoke probation for the legitimate exercise of the Fifth Amendment privilege.

"compulsion" under the Fifth Amendment. *Williams*, *supra* at 83-84; *Rylander*, *supra* at 758.

That an inmate is faced with this tactical decision is distinguishable from placing a direct penalty on assertion of the privilege against compelled self-incrimination, as in *Garrity* and *Lefkowitz*. See *Lefkowitz*, *supra* at 808, n 5. In *Carr*, as here, the state did not threaten "to inflict potent sanctions unless the constitutional privilege [was] surrendered." *Lefkowitz* at 805. Nor was assertion of the privilege "penalized so as to 'foreclose a free choice to remain silent, and . . . [compel] . . . incriminating testimony.' " *Murphy*, *supra* at 434. (Citation omitted.) I am aware of the federal and state cases from other jurisdictions cited in the dissent that conclude that prison disciplinary proceedings *compel* waiver of the privilege against compelled self-incrimination or that require *Miranda* warnings at prison disciplinary proceedings.[7] However, I am not persuaded by these cases because they fail to distinguish between a direct penalty on assertion of the privilege against compelled self-incrimination (e.g., that at issue in *Garrity*) and what is merely a difficult tactical decision that does not rise to the level of *compelled* self-incrimination.[8] I

---

[7] I believe that this Court should carefully and respectfully approach issues regarding which our conclusions differ from those in a majority of other jurisdictions that have considered the same issues. However, our ultimate task here is not to "count noses" but to interpret the language of the constitution. As clearly stated above, I agree with *Carr*'s conclusion that *Miranda* warnings are not required in the noncriminal context of prison disciplinary hearings.

[8] By respecting the distinction between direct compulsion to waive the privilege against compelled self-incrimination and mere indirect pressure to testify that creates a difficult tactical choice, I am seeking to accord reasonable meaning to the language of the Fifth Amendment. By effectively equating "compulsion" with a decision undertaken from among unattractive choices, the cases cited in the dissent create a slippery slope

instead focus on the language of the Fifth Amendment and on analogous United States Supreme Court cases fleshing out the parameters of the privilege against compelled self-incrimination. Accordingly, I am convinced that the current prison disciplinary proceeding structures do not *compel* inmates to testify in disciplinary proceedings and, therefore, that the Fifth Amendment privilege against compelled self-incrimination is not implicated by use of such testimony in a subsequent criminal proceeding.[9] For these reasons, I believe that *Carr* was wrongly decided regarding this issue and should not be followed.[10] What is at issue here is the admissibility of relevant evidence in a criminal proceeding. In the absence of a violation of a constitutional requirement, I do not believe that relevant evidence ought to be denied to the factfinder in such a proceeding. To do so here is to distort the meaning of constitutional language and thereby to diminish the ability of our criminal justice system to carry out its responsibility to the people of determining the truth about criminal activities.[11]

---

under which any vague psychological or emotional pressure to testify in a noncriminal proceeding could be deemed to constitute "compulsion" and therefore a violation of the Fifth Amendment. The result in each such instance is to deprive the factfinder in a criminal proceeding of relevant evidence relating to criminal conduct.

[9] *Carr* states that the Department of Corrections Hearing Handbook indicates that no statement made at a hearing is admissible at a subsequent criminal proceeding. The Department of Corrections is free to articulate whatever policy it chooses in its handbook, but I do not believe that such policy is required by the state or federal constitutions.

[10] I also note that *Rocha*, on which *Carr* is based, specifically stated that it was based "upon public policy rather than constitutional grounds." *Rocha, supra* at 512.

[11] I also find instructive Justice Boyle's dissent from the summary order denying leave to appeal in *People v Pacholka*, 451 Mich 896 (1996), in which, in the context of *Rocha, supra* (probation revocation proceeding), she questions whether courts have the inherent authority to grant use

Here, it is not clear from the record whether defendant was advised at the disciplinary hearing that his testimony would not be admissible against him at a subsequent criminal trial on the underlying offense, as required by *Carr*.[12] I would accordingly remand for determination of whether defendant was so advised. If he *was* so advised, and such testimony was in fact later used against him, elementary notions of due process would require that his conviction be reversed, independent of any Fifth Amendment concerns. See *People v Reagan*, 395 Mich 306; 235 NW2d 581 (1975). However, if he was not so advised, reversal of his conviction would not be required because I believe that the *Carr* Court's analysis of the Fifth Amendment issue was wrong.

O'CONNELL, P.J. (*dissenting*). I disagree with the lead opinion's conclusion that this case does not present "an important constitutional issue that is decisive of the outcome" of this case. *Ante* at 685. In *People v Carr*, 149 Mich App 653, 659; 386 NW2d 631 (1986), this Court held that "any evidence derived from testimony at a disciplinary hearing is inadmissible at subsequent criminal proceedings on the underlying charge, save for impeachment or rebuttal . . . ." This rule in *Carr* is outcome determinative of the present case and defendant's convictions should be reversed.[1]

---

immunity; *Carr* effectively grants use immunity to testimony given by an inmate in a disciplinary hearing.

[12] The fact that defendant does not argue that he was specifically promised that any testimony he provided at the disciplinary hearing would not be used in a subsequent criminal proceeding suggests that he may not have been so advised.

[1] Separation of powers concerns and a closer analysis of the constitutional question presented in *Carr* compel me to the conclusion that the *Carr* resolution is a public policy decision and is not warranted by the

While in prison for an unrelated conviction, defendant was found to be in possession of a small amount of marijuana. Corrections officers, acting on a tip, searched defendant immediately after he was observed being handed a small box. The box was found to contain 4.8 grams of marijuana. Defendant later asserted that he had not known what was in the box when it was handed to him.

Evidence concerning the circumstances surrounding the search of defendant could have supported the conclusion that defendant had been caught red-handed as a result of deft work by corrections officers. However, other evidence suggested that defendant had been framed—corrections officers consistently refused to disclose the identity of the informant, defendant was apprehended before he had had the opportunity to discover what the box he had been handed contained, and another inmate testified that *he* had handed defendant the box and that defendant would have had no way to know what was in it. Further, this other inmate was apparently never disciplined or prosecuted in any way.

An administrative disciplinary hearing was held before a hearing officer of the Michigan Department of Corrections. At the hearing, defendant admitted that he had knowingly possessed the marijuana and he was punished in accordance with Department of Corrections guidelines. He later stated that he pleaded guilty to avoid being considered a "snitch" by other inmates. Significantly, all parties concede that defendant was at no point told that his testimony

Fifth Amendment. However, until we can reach a workable resolution to the dilemma presented in this case, I am reluctant to advocate substantial changes to the current system.

could later be used against him in a criminal proceeding.

Soon after, criminal proceedings were initiated against defendant. Defendant testified at trial that he had not known that the box that he was handed contained marijuana. After considering the evidence set forth above, the jury was unable to reach a unanimous verdict.[2] Another trial was held. At the second trial, a new witness was produced, the hearing officer who had overseen the administrative disciplinary hearing. He testified that defendant had admitted at the disciplinary hearing that he had knowingly been in possession of marijuana. This testimony was not introduced for impeachment purposes but as substantive evidence. In light of the fact that defendant was then standing accused of having been a prisoner in possession of contraband, MCL 800.281(4); MSA 28.1621(4), this second jury, unsurprisingly, found defendant guilty. This appeal followed.

Defendant argues that the evidence of his earlier confession at the disciplinary hearing was not admissible in the subsequent trial because he was not read his *Miranda*[3] warnings. In his brief on appeal, defendant concedes that this issue was not raised by his trial attorney—the attorney lodged no objection to the admission of the hearing officer's testimony, nor did the attorney raise the issue at the postjudgment

---

[2] The record contains a transcript of the testimony presented at the first trial, but the transcript does not reflect the jury's verdict or, rather, an indication that the jury was unable to reach a verdict. I infer that the first trial resulted in a mistrial from defense counsel's representation at the sentencing hearing (after the second trial) that the first trial resulted in a hung jury. This representation is corroborated, obviously, by the fact that a second trial was conducted.

[3] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

motion for a new trial. Generally, we will not review an issue raised for the first time on appeal. *People v Davis*, 122 Mich App 597, 609; 333 NW2d 99 (1983); *People v Newcomb*, 190 Mich App 424, 431; 476 NW2d 749 (1991). However, if an important constitutional question is presented regarding the admissibility of evidence and is decisive of the outcome of the case, appellate review is appropriate. *People v Catey*, 135 Mich App 714, 722; 356 NW2d 241 (1984).

In the present case, defendant's first trial resulted in a mistrial because the jury was unable to reach a verdict. The only significant difference between the first trial and the second trial, at least in terms of the evidence presented, was the introduction of the hearing officer's testimony at the second trial. Thus, there could hardly be a clearer indication that the introduction into evidence of the testimony "is decisive of the outcome . . . ." *Id.* Therefore, I believe we are required to review this issue despite the fact that it was not properly preserved below.

To reiterate defendant's position, he contends that the admission into evidence of his prior confession of guilt violated his Fifth Amendment rights.[4] This Court reached this precise issue in *Carr, supra* at 659, relying on *People v Rocha*, 86 Mich App 497, 512;

---

[4] To my knowledge, every court that has addressed the issue, i.e., whether *Miranda* rights must be read at a prison disciplinary hearing, has concluded that the statements at a prison disciplinary hearing of an inmate who has not been advised of his *Miranda* rights may not be used against him at a subsequent criminal trial. *Avant v Clifford*, 67 NJ 496, 538-540; 341 A2d 629 (1975); *Carter v McGinnis*, 351 F Supp 787, 794 (WD NY, 1972); *People v Stamus*, 902 P2d 936, 938 (Colo App, 1995); *Grant v State*, 154 Ga App 758; 270 SE2d 42 (1980); *Pruitt v State*, 176 Ga App 317, 319; 335 SE2d 724 (1985); *United States v Redfield*, 402 F2d 454, 455 (CA 4, 1968); *State v Harris*, 176 Mont 70, 72-73; 576 P2d 257 (1978).

272 NW2d 699 (1978), in which we stated the following:

> [A]ny evidence derived from testimony at a disciplinary hearing is inadmissible at subsequent criminal proceedings on the underlying charge, save for impeachment or rebuttal, and the accused must be advised before testifying at the disciplinary hearing that his testimony will not be admissible against him at a subsequent criminal trial on the underlying offense.

It is not contended in the present case that the hearing officer's testimony was offered for impeachment[5] or rebuttal, and the prosecution concedes that the introduction into evidence of this testimony violates *Carr*.[6] While the prosecution submits that this error may be considered to have been harmless, for the reasons set forth above, I cannot so conclude. Therefore, because defendant's prior statements were improperly introduced into evidence in this criminal trial, and because the introduction of these statements almost certainly resulted in the verdict of

---

[5] Though the hearing officer's account of defendant's prior confession could have been used to impeach defendant's credibility, it was not so used in the present case. The hearing officer testified as part of the prosecution's case in chief, that is, before defendant testified, and the officer's testimony was utilized as substantive evidence of defendant's guilt.

[6] For the reasons stated in *Carr*, I agree that *Miranda* warnings are not required at prison disciplinary hearings. However, if the state intends to use the accused's testimony at a subsequent criminal proceeding, a different issue is presented. If I were writing on a clean slate, the focal point of this issue would be whether prison disciplinary hearings involve custodial interrogation. If there is no custodial interrogation at prison disciplinary hearings, then the *Miranda* warnings are not required. However, if custodial interrogation does/did occur, then the state, if it intends to use the accused's statements in a subsequent criminal proceeding, must give the accused his *Miranda* rights. *People v Hill*, 429 Mich 382; 415 NW2d 193 (1987).

guilty, defendant's conviction should be reversed.
*Carr, supra; Grant, supra.*

I would reverse.