# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

GEORGE RENNIE, JR.,

        Defendant-Appellant.

UNPUBLISHED
April 21, 2015

No. 319742
Wayne Circuit Court
LC No. 13-007178-FH

Before: HOEKSTRA, P.J., and MARKEY and DONOFRIO, JJ.

PER CURIAM.

Defendant was convicted in a jury trial of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. He was sentenced to two years' imprisonment. Defendant appeals as of right, and for the reasons provided herein, we affirm.

## I. BRIEF STATEMENT OF FACTS

This case arises out of a family dispute. On June 25, 2013, defendant's brother (John), sister-in-law (Peggy), and nephew (George Edward) all went to the home of defendant's father (Senior)[1] to discuss another family issue. Defendant arrived at the home sometime shortly after the others. At that time, defendant and Peggy began to argue loudly.

According to Peggy, George Edward, and John, the events unfolded as follows. George Edward remained outside during the entire ensuing argument between his parents and defendant. Defendant and Peggy began to argue, and then John saw defendant standing very close to Peggy, "with his hand in her face," and threatening her. John then stepped in between Peggy and defendant. Defendant then raised his hands, causing John to think they would end up in a fight. Instead, defendant raised a gun at Peggy and John. Peggy indicated that the gun was pointed at John's face. Peggy saw a "red dot" come out of the gun, but she was unsure if the dot was pointed anywhere. The gun was a 9-mm semi-automatic handgun with a laser sight that

---

[1] Defendant's father is George Rennie, Sr. To avoid confusion, this Court will refer to him as "Senior."

-1-

activated when the gun's grip was held. Peggy and John yelled to George Edward outside to call 911.

After the gun was pointed at them, John moved toward the front of the house, and Peggy moved toward the rear of the house. As John left through the front door, defendant followed but stopped at the doorway, while continuing to argue with John. At this time, defendant had put the gun back in his holster. But after Peggy yelled for someone to call the police, defendant turned around, pulled the gun back out, and moved toward Peggy. Peggy testified that the gun was now pointed at her face and head, and she started screaming. John testified that he came back into the house after hearing Peggy's cries and that he assisted Peggy in exiting the home through the front door. Westland police arrived within 15 minutes, and defendant did not come out of the home until the police directed him to exit.

Defendant and Senior testified that the events were quite different. Defendant testified that at the beginning of his argument with Peggy, she began to yell at him, so he pointed his finger at her and told her that he could not understand her when she shouted at him. Then, Peggy and John moved toward defendant, and John pushed defendant to his knees. When defendant attempted to stand up, Peggy, John, and George Edward were coming toward him. Defendant testified that he pulled out his gun because he feared for his safety and thought they might kill him. John is 5'10" tall and 190 pounds. Defendant is 5'9" tall and 145 to 150 pounds. Defendant testified that he is "a very frail person" because he has arthritis, "pieces of [his] hips missing," a steel plate in his knee, a dislocated shoulder, and a steel cage in his neck.

At the close of the prosecution's witnesses, the trial court advised defendant of his rights and asked defendant if he intended to testify in his defense. Defendant's trial counsel responded:

Your honor, at this point I guess two things. We do have one defense witness we'd like to call before we make that decision. And, second, there is, and this should only take a minute to play, there's a 911 call we'd like to play too. So understanding where you're going, I'm putting it in the proper course of events.

Defendant then presented one witness on his behalf, and that day of trial ended. At the beginning of trial the next day, the trial court again advised defendant of his rights and asked if he planned to testify in his defense. Defendant stated that he would testify. Then, after defendant introduced some evidence and called another defense witness, the defense rested without defendant's testimony. At this point, the trial court excused the jury and again asked the defendant if he intended to testify in his defense because trial counsel rested without defendant's testimony. Defendant stated that he would not testify. Then, the trial court and defendant engaged in the following exchange:

> *Trial Court*: Let me tell you that based upon the testimony of [Senior], there's not sufficient testimony to warrant a self-defense instruction. Do you understand what I'm saying to you?

> *Defendant*: Yeah.

> *Trial Court*: In other words, self-defense is not going to be given as an instruction to this jury. Do you understand that?

*Defendant*: All right. Then I tell you what, I will testify.

*Trial Court*: See now, you've got to make up your mind here, dude.

*Defendant*: Okay.

*Trial Court*: Okay? You've got to fish or cut bait.

*Defendant*: Okay, I will testify.

*Trial Court*: Is this a final decision?

*Defendant*: Yes.

*Trial Court*: This is your final decision?

*Defendant*: This is my final decision.

Defendant did testify, and the jury was instructed on self-defense. The jury then convicted defendant of felony-firearm but acquitted him of two counts of assault with a dangerous weapon.

## II. FIFTH AMENDMENT CHALLENGE

Defendant first argues that the trial court impermissibly coerced him to testify at trial in violation of the Fifth Amendment. The parties are in disagreement as to whether defendant preserved this issue for review. Defendant raised this issue to the trial court in his motion for directed verdict or new trial. Because defendant may raise a constitutional issue for the first time in a motion for a new trial, without a contemporaneous objection, the issue is preserved. See *People v Dixon*, 217 Mich App 400, 409; 552 NW2d 663 (1996) (holding that a defendant did not preserve his claim that he was deprived of his right to a fair trial because he did not raise the issue below in a motion for a new trial or any posttrial motion).[2] We review a trial court's findings of fact for clear error and review its constitutional determinations de novo. *People v Dendel*, 481 Mich 114, 124; 748 NW2d 859 (2008) amended 481 Mich 1201 (2008).

---

[2] Defendant, in an apparent attempt to cover all of his bases, also argued that if a contemporaneous objection to the Fifth Amendment issue was needed in order to preserve it for appellate review, his trial counsel was ineffective for failing to make a contemporaneous objection to the matter. Defendant did not need to make this argument. The issue was preserved because it was raised in defendant's motion for a new trial. In any event, because the trial court did not violate defendant's Fifth Amendment rights, as we will discuss, *infra*, defendant's anticipated argument that his trial counsel was ineffective would also fail. If defense counsel had objected, his objection would have been without merit. See *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010) ("Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel.").

In his brief on appeal, defendant focuses on the assertion that the trial court was wrong when it concluded that there was no basis for a self-defense instruction before defendant testified. However, defendant is conflating issues. Whether the trial court erred when it made its legal determination that, before defendant testified, there was insufficient evidence to support a self-defense jury instruction is a distinct matter from whether the trial court *compelled* defendant to testify. One error does not equate to the other. If the court had erred in failing to give the proper jury instruction,[3] then that error could have been corrected later by this Court without defendant testifying. In other words, whether the trial court's statement is accurate or correct is not relevant—what is relevant is whether the court's statement impermissibly compelled defendant to testify.

The Fifth Amendment of the United States Constitution provides that "[n]o person shall . . . be compelled in any criminal case to be a witness against himself." US Const, Am V. "The Fifth Amendment has been made applicable to the states through the Due Process Clause of the Fourteenth Amendment." *People v Clary*, 494 Mich 260, 265; 833 NW2d 308 (2013), citing *Malloy v Hogan*, 378 US 1, 3; 84 S Ct 1489; 12 L Ed 2d 653 (1964). Of course, a criminal defendant may choose to testify in his own defense. *People v Boyd*, 470 Mich 363, 373; 682 NW2d 459 (2004).

Defendant was not impermissibly compelled to testify. The relevant test for whether a defendant's Fifth Amendment right to silence is violated is "whether, under the circumstances of [the] case, [the defendant] was deprived of the ability to voluntarily invoke the Fifth Amendment." *Salinas v Texas*, ___ US ___; 133 S Ct 2174, 2180; 186 L Ed 2d 376 (2013). The United States Supreme Court has found that there are some circumstances in which government coercion makes exercise of the privilege impossible, and this is an unconstitutional deprivation of the right. See, e.g., *Lefkowtiz v Cunningham*, 431 US 801, 805; 97 S Ct 2132; 53 L Ed 2d 1 (1977) ("When a State compels testimony by threatening to inflict potent sanctions unless the constitutional privilege is surrendered, that testimony is obtained in violation of the Fifth Amendment . . . ."); *Garrity v New Jersey*, 385 US 493, 497; 87 S Ct 616; 17 L Ed 2d 562 (1967) (stating that threats to withdraw public employment for failure to incriminate oneself are unconstitutional).

Defendant did not face these types of potent sanctions. There is a distinction between "direct compulsion" and "mere indirect pressure to testify that creates a difficult tactical choice." *People v Wyngaard*, 226 Mich App 681, 693 n 8; 575 NW2d 48 (1997) (MARKMAN, J., concurring in part, dissenting in part), rev'd 462 Mich 659, 673-674 (2000) (agreeing with J. MARKMAN'S concurrence that a difficult decision is not compulsion). Our Supreme Court has further stated:

> The Fifth Amendment most certainly protects a defendant from compelled self-incrimination, however, a defendant's decision to testify, even if "compelled" by the relative strength of the prosecutor's evidence, is not "compelled" in violation of the Fifth Amendment. In other words, a defendant must consider the

---

[3] We offer no opinion on this matter.

> strength of the prosecutor's evidence and the importance of putting in evidence as a basis for a jury instruction when determining whether to testify. [*People v Mills*, 450 Mich 61, 81 n 14; 537 NW2d 909 (1995) (citation omitted).]

We would add that the above concept—a defendant's consideration of the "relative" strength of the prosecutor's evidence before deciding on testifying—necessarily includes a consideration of the weakness of defendant's own evidence presented thus far.

As the prosecution notes in its brief on appeal, defendant simply made a strategic choice—one of many. Defendant could have presented more evidence in forms other than his testimony. For instance, defendant explained the reasonableness of his actions by describing himself as "a frail person." Instead of testifying about this himself, defendant could have called other witnesses to testify about his health. Of course, it is much more difficult to prove one's state of mind, which is a necessary component of a self-defense claim, without that person's testimony. But that is the defense that defendant chose to employ—no one forced that decision. And as previously noted, defendant could have refrained from testifying if he was certain that the trial court erred in refusing to give the self-defense instruction in the first place and appealed any conviction to this Court.

Further, review of the record reinforces the conclusion that defendant made a strategic choice to testify. It was plain that defendant was waiting to decide whether to testify on the basis of the testimony of his other witnesses. The first time that the trial court asked defendant if he would testify, defense counsel informed the trial court, "We do have one defense witness we'd like to call before we make that decision." Then, at the beginning of the following day of trial, again, the trial court asked defendant if he would testify. He stated that he would. However, after calling his second defense witness, defense counsel rested without calling defendant to testify. Then, the trial court again asked defendant if he intended to testify. Certainly, this was not unusual for the trial court to do as defendant informed the trial court earlier *that day* that he would testify, and then, defense counsel rested without defendant's testimony. It is at this point that the trial court informed defendant that, in its view, the record did not support a self-defense instruction. Obviously, defendant grappled with whether to testify, but the court's legal determination on whether a jury instruction was supported by the evidence as presented up until that point does not qualify as unconstitutional coercion.

## III. QUESTIONS FROM THE TRIAL COURT

Defendant next claims that the trial court's questioning deprived him of a fair trial. The parties disagree as to whether defendant preserved this issue for appellate review, but again, this issue is preserved because defendant raised it in his motion for a new trial. See *Dixon*, 217 Mich App at 409.[4] The constitutional issue of whether defendant was denied his right to a fair and

---

[4] Defendant again argued that, to the extent it was necessary for his trial counsel to make a contemporaneous objection to the trial court's questioning of the witnesses in order for this Court to review the matter, his trial counsel was ineffective for failing to make these objections.

impartial trial is reviewed de novo. *People v Mahone*, 294 Mich App 208, 215; 816 NW2d 436 (2011).

A trial judge has broad, but not unlimited, discretion when controlling the court's proceedings. *People v Taylor*, 252 Mich App 519, 522; 652 NW2d 526 (2002); *People v Paquette*, 214 Mich App 336, 340; 543 NW2d 342 (1995). The overriding principle is that a court's actions are not to pierce the veil of judicial impartiality. *People v Davis*, 216 Mich App 47, 50; 549 NW2d 1 (1996). Invading the prosecutor's role is a clear violation of this tenet. *People v Ross*, 181 Mich App 89, 91; 449 NW2d 107 (1989). The trial court, pursuant to MRE 614(b), may question witnesses to clarify testimony or elicit additional relevant information. *People v Conyers*, 194 Mich App 395, 404; 487 NW2d 787 (1992). "However, the trial court must exercise caution and restraint to ensure that its questions are not intimidating, argumentative, prejudicial, unfair, or partial." *Id.* at 405. The test to determine whether a new trial is warranted is whether the judge's questions and comments may well have unjustifiably aroused jurors' suspicion as to a witness's credibility "and whether partiality quite possibly could have influenced the jury to the detriment of defendant's case." *Id.* (quotation marks and emphasis omitted). When a trial judge's questioning does cross the line of judicial impartiality, this Court employs a harmless-error standard. *Davis*, 216 Mich App at 51.

Specifically, defendant challenges (1) the trial court's questions to him when he testified in his own defense, (2) the trial court's questions to Westland Police Officer Derek Trosper regarding the operability of the gun and defendant's statements made to Trosper on scene, and (3) the trial court's questions to the prosecution's witnesses John, Peggy, and George Edward, inquiring if they had any weapons. The trial court questioned defendant after his direct examination by his counsel and cross-examination by the prosecution. Defendant claims that the following exchange with the trial court was improper:

> *Q.* Why did you pull out the handgun? Did you attempt to, when you pulled out the handgun, to communicate something to [Peggy] and to [John] and to [George Edward]?
>
> *A.* Well, yes. I had been pushed, and I had fallen backwards, and I saw them coming at me, and I was in fear for my safety. I pulled it out and said, "Back off."
>
> *Q.* And what were you attempting to communicate to them? How did you want them to feel?
>
> *A.* I wanted them to understand that I didn't want to be hurt. I wanted them not – to get away.
>
> *Q.* So what did you want to convey to them? What did you want them to feel?

---

Defendant did not need to make this argument because we conclude that the issue was properly preserved because it was raised in defendant's motion for a new trial.

> *A.* I wanted them to feel my threat.
>
> *Q.* Okay, did you want them to feel that if they did not back off, that you were going to use the weapon that you had in your hand, yes or no?
>
> *A.* All I wanted was for them to back off.
>
> *Q.* Answer my question, sir.
>
> *A.* Repeat your question, please.
>
> *Q.* Did you want them to convey to them that if they did not back off, that you were going to use that weapon, yes or no?
>
> *A.* No I wouldn't have shot them, but I was in fear for my safety, and I just – I wanted them to back off.
>
> *Q.* How did you want them to feel? Did you want them to feel as if that if they did not back off, that you were going to use that weapon?
>
> *A.* Well, yes, because I was in fear for my safety. I thought they were going to hurt me.

The trial court's questions went to the heart of the matter—did defendant assault John or Peggy? Even though defendant was acquitted on the assault charges, he was charged with two counts of felonious assault, MCL 750.82, and one of the elements of that crime is that the defendant *had the intent* to place the victim in reasonable apprehension of an immediate battery. *People v Chambers*, 277 Mich App 1, 8; 742 NW2d 610 (2007). Thus, it was proper for the trial court to ask these questions to elicit further information or clarify defendant's testimony regarding his intent. While a trial court's repetition of a question generally may implicate partiality, here, the trial court simply repeated this question multiple times because defendant was not responding to the question in front of him. It is proper for the trial court to ask its own questions of witnesses where witnesses are "difficult" or "confused." *Davis*, 216 Mich App at 50. Furthermore, even though a trial court's questions may damage a defendant's case, it does not necessarily follow that the trial court usurped the role of the prosecutor. *Id.* at 51. Notably, however, these questions did not damage defendant's case because they allowed him to continue to tout his theory of the crime—that he acted in self-defense. Importantly, after the trial court completed its line of questioning, it allowed both parties to re-cross and redirect-examine defendant, suggesting the impartiality of the trial court.

Defendant also claims that the trial court's questions and requests to Trosper regarding the gun found on defendant were improper. The trial court asked Trosper to take the gun out of the evidence bag and point it at the judicial podium and then asked him whether the laser is activated by pulling the trigger. Trosper replied in the negative, stating that the laser activated by "[p]ressing . . . just below the slide." The trial court also asked Trosper whether the gun was ready to fire, and Trosper indicated that it was. The trial court's questions about the gun, although perhaps unconventional, were not improper. Defendant was charged with felony-firearm and felonious assault. For both of those crimes to be submitted to the jury, the firearm or

"dangerous weapon," as defined by the felonious assault statute, must be capable of discharging a projectile, although it may not necessarily be required to be operable. See *People v Stevens*, 409 Mich 564, 567; 297 NW2d 120 (1980) (felonious assault conviction overruled where the "dangerous weapon" at issue was a starter pistol with the firing pin filed down to the point that it was impossible to fire the pistol); *People v Schofield*, 124 Mich App 134, 135-136; 333 NW2d 607 (1983), rev'd on other grounds 417 Mich 988 (1983) (plea bargain to felony-firearm charge reversed because a toy gun is not a firearm within the statutory definition of firearm). At this point in the trial, none of the witnesses had established that the gun was a real gun capable of firing a projectile. Thus, the trial court was simply eliciting additional relevant information from Trosper, which was not improper. *Davis*, 216 Mich App at 50-51. Furthermore, the trial court also could have asked these questions to clarify for the jury how the laser was activated.

Defendant also claims that the trial court's question to Trosper, "And you said that he admitted aiming this handgun at a woman," was improper because it "could be viewed as prejudicial to [defendant] because of the implication that aiming the gun at [Peggy] was somehow worse because she was a woman." Defendant's argument is without merit. There is no indication that the trial court meant to imply that defendant's actions were any worse because he pointed the gun at a woman. Instead, the question simply clarified that defendant admitted to pointing the gun at Peggy, who was the only woman present, and not at anyone else. This was not improper.

Finally, defendant claims that the trial court's questions of the prosecution's witnesses were improper. The trial court questioned Peggy if she, George Edward, or John had any weapons. The trial court also asked John if he had a weapon, if he told defendant that he had a weapon, or if he physically touched defendant on that day. These questions in no way usurped the role of the prosecutor or exposed any partiality of the trial court. Rather, the trial court was attempting to elicit additional, relevant information.

When a criminal defendant presents a theory of self-defense, he must produce sufficient evidence that "he honestly and reasonably believe[d] that he [was] in imminent danger of death or great bodily harm and . . . it [was] necessary for him to exercise deadly force." *People v Riddle*, 467 Mich 116, 119; 649 NW2d 30 (2002). The trial court determines if defendant has met his burden, and if he has, then the trial court will instruct the jury on self-defense. *People v Rodriguez*, 463 Mich 466, 472; 620 NW2d 13 (2000). Here, the trial court's questions can be easily explained as the trial court's thorough consideration of whether defendant met his burden of production on the self-defense theory. Plainly, the trial court initially did not consider the evidence sufficient, which suggests that the trial court asked these questions to elicit additional information that would support defendant's theory.

The instant case almost exactly aligns with *Davis*. In *Davis*, the trial court "questioned several witnesses regarding whether the defendant lived at the house where the assault occurred and whether he stored a gun in the house." *Davis*, 216 Mich App at 51. While some of these questions were in response to questions from the jury, some of these questions "occurred after the court indicated to the parties that the evidence did not support a 'no duty to retreat' instruction but that it would reserve its ruling with regard to that issue until after defendant finished presenting his case." *Id*. Therefore, this Court determined that the questions from the

trial court were "relevant to issues in dispute and were intended to clarify those issues." *Id*. This Court continued, opining:

> There is no indication that the court's questions were intimidating or argumentative or that the court assumed the prosecutor's role in its questioning. While the answers to these questions may have contradicted defendant's claims, the questions themselves did not unjustifiably arouse jury suspicions regarding a witness' credibility. Nor is there any indication that the questions demonstrated prejudice, unfairness, or partiality on the court's part that might have influenced the jury. Further, the court specifically instructed the jury that its questions were not evidence. Under these circumstances, we find that the court's questioning of the witnesses was appropriate. [*Id*. at 52.]

Similarly, the trial court in the instant case asked questions that were relevant to issues in dispute in an attempt to clarify those issues. Also, the trial court specifically instructed the jury that its questions were not evidence. Therefore, none of the questioning by the trial court deprived defendant of a fair trial.

## IV. INSTRUCTIONAL ERROR

Defendant next argues that the trial court erred when it failed to re-read the self-defense instruction in response to a question from the jury. This Court generally reviews claims of instructional error de novo. *People v Dobek*, 274 Mich App 58, 82; 732 NW2d 546 (2007). This Court must reverse "when the error is outcome determinative, meaning the error undermined the reliability of the jury verdict." *People v Mitchell*, 301 Mich App 282, 288-289; 835 NW2d 615 (2013). The trial court's decision whether to reinstruct the jury is reviewed for an abuse of discretion. *People v Parker*, 230 Mich App 677, 680-681; 584 NW2d 753 (1998).

Defendant is "entitled to have all the elements of the crime submitted to the jury in a charge which is neither erroneous nor misleading." *People v Kowalski*, 489 Mich 488, 501; 803 NW2d 200 (2011) (quotation marks and brackets omitted). However, a trial is not automatically unfair or unreliable where a jury instruction misinforms the jury of the elements of an offense. *Id*. So long as the jury instructions "fairly presented the issues to be tried and adequately protected the defendant's rights," then there was no instructional error. *Id*. at 501-502.

Here, defendant does not challenge the content of the initial instructions; instead, he challenges the court's re-reading of the instructions for felony-firearm. When the jury asked if it could find defendant not guilty of the first two counts of assault but guilty of felony-firearm, the trial court responded by re-reading the instructions related to the felony-firearm count, which, in part, specified that "[i]t is not necessary" that defendant be convicted of either assault count. Defendant claims that it was erroneous to omit a restatement of the self-defense instruction.

However, "[i]t is not an abuse of discretion for a trial court to fail to repeat instructions addressing areas not covered by a jury's specific request." *Parker*, 230 Mich App at 681. Here, the jury's question dealt specifically with the interplay between the felony-firearm count and the other two assault counts. Thus, because the concept of self-defense had nothing to do with the

inter-dependence between these counts, the court was within its discretion to not repeat the self-defense instruction. *Id.*

Defendant's attempt to align this case with *People v Goree*, 296 Mich App 293; 819 NW2d 82 (2012), is misplaced. In *Goree*, the trial court *expressly* stated that "there could not be a self-defense to felony[-]firearm," after the jury asked the trial court if self-defense applied to the felony-firearm charge. *Id*. at 299-300 (emphasis omitted). The jury in the instant case did not ask this specific question. In fact, it asked an entirely different question—whether defendant could be convicted of felony-firearm, but acquitted of the underlying felonies. Furthermore, defendant provides no support, and this Court has found none, for the proposition that a trial court can abuse its discretion for failing to reinstruct on one particular instruction that is tangentially related to the requests of the jury. If defendant were to succeed on his claim, it would put trial court judges in a very difficult position when responding to jury questions. Trial judges would have to predict which tangentially related instructions the jury also might need to hear again. Plainly, this result is absurd.

## V. JURY VERDICT AGAINST THE GREAT WEIGHT OF THE EVIDENCE

Defendant next argues that his conviction for felony-firearm is against the great weight of the evidence. This Court reviews "a denial of a motion for a new trial based on a great weight of the evidence argument under an abuse of discretion standard." *People v DeLisle*, 202 Mich App 658, 661; 509 NW2d 885 (1993).

Defendant was convicted by the jury of felony-firearm. To convict a defendant of felony-firearm, a jury must find that the prosecution proved, beyond a reasonable doubt, that the defendant "possessed a firearm during the commission of, or the attempt to commit, a felony." *People v Akins*, 259 Mich App 545, 554; 675 NW2d 863 (2003). A jury verdict will be vacated "only when it does not find reasonable support in the evidence, but is more likely to be attributed to causes outside the record such as passion, prejudice, sympathy, or some extraneous influence." *DeLisle*, 202 Mich App at 661 (quotation marks omitted). The test is "whether the verdict was manifestly against the clear weight of the evidence." *Id*. The trial court "may not repudiate a jury verdict on the ground that [it] disbelieves the testimony of witnesses for the prevailing party." *People v Lemmon*, 456 Mich 625, 636; 576 NW2d 129 (1998) (quotation marks omitted).

As defendant acknowledges, juries are permitted to render "seemingly inconsistent verdicts" because "juries are not held to any rules of logic and have the power to acquit as a matter of leniency." *People v Lewis*, 415 Mich 443, 449; 330 NW2d 16 (1982) (quotation marks omitted). Thus, the fact that the jury acquitted defendant of the assault counts is not dispositive.

Instead, the question is whether the evidence preponderated so heavily against the guilty verdict that it would be a miscarriage of justice to allow the verdict to stand. *People v McCray*, 245 Mich App 631, 637; 630 NW2d 633 (2001). The evidence does not support defendant's claim. The fact that defendant pointed his gun at someone is undisputed. Therefore, the primary issue for the jury was whether it accepted defendant's theory of self-defense.

-10-

This case primarily came down to credibility. Defendant claimed that he was pushed/battered to the floor before pulling his gun out, and the prosecution's witnesses testified that defendant was not pushed or threatened with violence before he drew his weapon. Such credibility determinations are the sole province of the jury. *People v Lacalamita*, 286 Mich App 467, 470; 780 NW2d 311 (2009). "Conflicting testimony or a question as to the credibility of a witness are not sufficient grounds for granting a new trial." *Lemmon*, 456 Mich at 643 (quotation marks omitted). Conflicting testimony does not warrant reversal unless the testimony contradicted undisputed physical facts or the witness was so far impeached that the testimony lost all probative value. *People v Roper*, 286 Mich App 77, 89; 777 NW2d 483 (2009). Here, the testimony of the witnesses for the prosecution was not deprived of all probative value. Thus, defendant has failed to establish that he is entitled to a new trial.

Moreover, even accepting defendant's version of events as true, the jury easily could have concluded that with no one else possessing a weapon and there being no evidence of any threats directed toward defendant, defendant's belief that he feared for his life was not reasonable. Thus, even giving deference to defendant's version of events, we conclude that there was support in the record for the jury to find that self-defense was not applicable. Although it did not convict defendant of the underlying felonies, on the basis of this record, it is the opinion of this Court that it could have.

Affirmed.

/s/ Joel P. Hoekstra
/s/ Jane E. Markey
/s/ Pat M. Donofrio

-11-